PEOPLE *v.* QUIGLEY.

1. ROBBERY—INFORMATION—SUFFICIENCY—STATUTORY ROBBERY.

In an information charging an offense under 3 Comp. Laws 1915, § 15229, it is not necessary to charge the common-law offense of robbery, since the statute creates an offense, and while it contains some of the elements of common-law robbery, it does not remit the pleader to the common-law definition of what constitutes robbery, viz., taking from the person, but only from any building, bank, safe, etc.

2. SAME—INTENT.

Under the statute, intent is an element of the offense, and must be sufficiently charged.

3. SAME—INFORMATION—SUFFICIENCY—INTENT—PRESUMPTION.

Said information charging defendants with entering a bank and there feloniously assaulting the cashier and putting him in bodily fear and danger of his life, and that they then and there did, by force and violence and against the will of the cashier, feloniously rob and carry away money, bonds, and securities from the bank, contrary to the form of the statute, *held*, sufficient to charge that the assault was made with the intent of stealing from the bank; the presumption being that what they did they intended to do.

4. CRIMINAL LAW—EVIDENCE—IDENTITY.

Testimony as to the identity of defendants with the men who committed the robbery, while not very certain, *held*, admissible; its weight being for the jury.

5. APPEAL AND ERROR—WEIGHT OF EVIDENCE—NEW TRIAL.

The question as to whether the verdict of guilty was against the weight of the evidence will not be passed upon by the Supreme Court, on error, in the absence of a motion for a new trial.

6. CRIMINAL LAW—TRIAL—INSTRUCTIONS—IDENTITY — OPINION OF COURT.

In view of the charge as a whole, an excerpt that "It is

On possession of recently stolen property as evidence of larceny, see note in 12 L. R. A. (N. S.) 199.

for you to say, under the evidence in the case, whether or not the testimony of these witnesses sufficiently identifies these respondents in the commission of the crime," *held*, not open to the objection that it contained an expression of opinion that there was testimony tending to establish the fact that the defendants were in the bank on the day of the robbery.

7. SAME—INSTRUCTIONS—POSSESSION OF ONE OF JOINT DEFENDANTS POSSESSION OF BOTH.

An instruction that if both defendants were jointly engaged in the undertaking of disposing of stolen bonds, then, as a matter of law, both defendants were in possession of the bonds on that occasion, although physically they were actually in the possession of but one of them, *held*, correct.

8. SAME—LARCENY—POSSESSION OF RECENTLY STOLEN GOODS—EVIDENCE OF GUILT.

An instruction that the possession of recently stolen property unsatisfactorily explained, is sufficient evidence in this State to sustain a verdict of guilty of larceny, *held*, not error, in view of the evidence and the issues thereon left to the jury.

Error to Berrien; White (Charles E.), J. Submitted October 13, 1921. (Docket No. 163.) Decided December 22, 1921.

Frank J. Quigley and Fred Hague were convicted of robbing a bank. Affirmed.

*W. W. O'Brien* (*Thomas E. Swanson*, of counsel), for appellants.

*Charles W. Gore*, Prosecuting Attorney, *John J. Sterling*, Special Prosecuting Attorney, for the people.

WIEST, J. Just before noon, on the 18th day of March, 1921, two men entered the bank of G. A. Blakeslee Company, in the village of Galien, where Theron N. Chilson, cashier, was on duty alone seated at his desk behind a glass partition, and one of them

covered the cashier with a revolver and commanded him to hold up his hands, and, remarking that he was not quick enough about it, fired through the glass partition. The bullet did not strike the cashier. The other man then climbed over the partition and opened the door and let his companion in, and at the point of the revolver the cashier was forced to unlock the day door to the money vault and open the burglar chest. In the cashier's desk there was about $5,000 in cash and in the burglar chest about $60,000 in industrial, municipal, and liberty bonds, which they took, and after striking the cashier on the back of the head, causing a wound requiring medical attention and two stitches, they went to the street door where an automobile with a driver was awaiting them and drove away. Six days later defendants entered a brokerage office at the union stock yards, Chicago, and Quigley was there introduced under the false name of H. C. Walters, and he handed a package of bonds of the par value of $8,200, and a part of the bonds stolen from the bank, to the broker and requested that they be sold. A purchaser was found, and check drawn by the broker to H. C. Walters, but, further identification being required, and both defendants being nervous and endeavoring to unduly hurry matters, the suspicion of the broker became aroused and he notified the police and defendants were arrested and brought to this State and tried, convicted and sentenced for the robbery.

Defendants bring the case here for review on writ of error, claiming the information was insufficient; that the testimony of identity of defendants should not have been submitted to the jury; that defendants should have been found not guilty under the evidence, and that the charge of the court was erroneous in several particulars. No motion was made for a new trial or to quash the information.

Omitting formal parts the information charged:

"That Frank Quigley and Fred Hague, heretofore, to wit: on the 18th day of March, in the year one thousand nine hundred and twenty-one, at the county of Berrien aforesaid; did then and there feloniously, with force and arms in and upon one Theron N. Chilson make an assault, and him, the said Theron N. Chilson, did beat, maim, injure, and wound and feloniously did then and there put him, the said Theron N. Chilson, in bodily fear and danger of his life, and money, bonds, securities, bank notes, other valuables, personal property, goods and chattels, of the value of to wit: Sixty thousand dollars, of the goods, chattels and property of G. A. Blakeslee Company, bankers, in the bank, safe and depositories of said bank, then and there being found in said county and State, against the will of the said Theron N. Chilson, the cashier of said G. A. Blakeslee Company, feloniously did then and there, and by force and violence, steal, take, rob and carry away, contrary to the form of the statute in such case made and provided," etc.

The statute, section 15229, 3 Comp. Laws 1915, so far as applicable to the charge made, provides:

"That whoever, with the intent to commit the crime of larceny, or any felony, shall * * * injure or wound, * * * or shall put in fear any person for the purpose of stealing from any building, bank, safe, or other depository of money, bonds, or other valuables, * * * shall, whether he succeeds or fails in the perpetration of such larceny or felony, be punished," etc.

It is urged that the information is fatally defective as a charge of common-law robbery as it neither charges that property was taken from the person of the party assaulted or that it was taken by force. The statute under which this information was laid does not undertake to denounce the common-law offense of robbery. It creates an offense, and while it contains some of the elements of common-law robbery, it does not remit the pleader to the common-law definition

of what constitutes robbery.   This statute does not
make it necessary to charge that the property was
taken from the person of the party assaulted, but
only from any building, bank, safe, or other depository
of money, bonds, or other valuables, and accomplished
by confining, maiming, injuring or wounding, or at-
tempting to do so, or putting in fear any person who
might interfere with the plan.   Such person so put
in fear or assaulted might be a patrolman on the
street or a customer in the bank or one just entering
or leaving the bank, provided the assault was made
in the perpetration of the offense.   This information
can be laid down upon the statute and be found to
contain all the essential averments required.   But it
is said that the intent of the assault is not averred
nor the purpose thereof, as required by the statute.
The statute requires an intent to commit the crime of
larceny, or any felony, or an assault or putting in
fear for the purpose of stealing from any building,
bank, safe or other depository of money, bonds or
other valuables.   An intent is, therefore, involved.
Is such intent sufficiently charged in the information?
To hold that an information charging two men with
entering a bank and there feloniously assaulting the
cashier and putting him in bodily fear and danger of
his life, and then and there, that they did, by force
and violence and against the will of the cashier, feloni-
ously rob and carry away $60,000 in money, bonds
and securities from the bank, safe and depository, does
not charge that the assault was made with intent to
commit a larceny or felony or for the purpose of steal-
ing from the bank would offend common sense.   There
is no presumption or permissible inference that what
they did do they did not intend to do; the presumption
is the other way, and upon the trial, from what they
did do, the jury could find the intent.

An intent, of course, is a secret of a man's mind,

and he can disclose it by declarations or by his actions. And actions sometimes speak louder than words. It would seem that an intent to commit a larceny, or the purpose of stealing from a bank, sufficiently appears charged when it is charged that there was a felonious assault and as a part thereof a felonious stealing and robbery from the bank depository, and such is the law.

The information charges a felonious assault upon the cashier of the bank and a felonious putting of him in bodily fear and a felonious stealing and robbery of the money and bonds and securities from the bank. We do not commend this information as a model, but hold it sufficient after conviction when it is attacked for the first time in this court.

In *State* v. *Hughes,* 31 Nev. 270 (102 Pac. 562), the defendant was convicted of the crime of assault with intent to commit robbery, and it was urged that the indictment was not sufficient because it did not allege that the acts done by defendant were done with the intent to commit the crime of robbery. In passing upon this question the court said:

"The record does not disclose that the indictment was demurred to or that a motion in arrest of judgment was interposed. The sufficiency of the indictment appears, therefore, to be questioned for the first time upon appeal. The indictment, it must be admitted, is far from being a model. Where, however, the sufficiency of an indictment is questioned for the first time upon appeal, it will not be held insufficient to support the judgment, unless it is so defective that by no construction, within the reasonable limits of the language used, can it be said to charge the offense for which the defendant was convicted. * * *

"The word 'feloniously' used in the body of the indictment, in a legal sense, means, 'done with intent to commit crime,' Its use in an indictment has uniformly been held to be a sufficient averment of the intent necessary to constitute the crime. *State* v. *Douglas,* 53 Kan. 669 (37 Pac. 172) ; *State* v. *Halpin,*

16 S. D., 170 (91 N. W. 605); *People* v. *Willett*, 102 N. Y. 251 (6 N. E. 301); *Phelps* v. *People*, 72 N. Y. 334; *People* v. *Dumar*, 42 Hun (N. Y.), 80; *State* v. *Rechnitz*, 20 Mont. 488 (52 Pac. 264); *State* v. *Smith*, 31 Wash. 245 (71 Pac. 767); *State* v. *Boyle*, 28 Iowa, 522; *People* v. *Butler*, 1 Idaho, 231; *People* v. *Lopez*, 90 Cal. 569 (27 Pac. 427); *Commonwealth* v. *Adams*, 127 Mass. 15; 3 Words and Phrases Judicially Defined, p. 2731.

"Had the word 'feloniously' been used directly to qualify the word 'assault' it could be said with a greater degree of clearness that the intent is sufficiently alleged. However, in view of the fact that the formal part of the indictment acquainted the defendant with the specific crime with which he was intended to be charged, and the body of the indictment contains language which is capable of being construed into the equivalent of a charge of the essential element of intent, and the indictment not having been questioned in the lower court, we are not disposed to hold it fatally defective. There is nothing whatever to indicate that the defendant was misled by the form of the indictment, or that he at any time failed to fully appreciate that he was indicted for and was being tried for the crime of assault with intent to rob."

In *State* v. *Bannister*, 79 Vt. 524 (65 Atl. 586), it was claimed that the use of the word "feloniously" does not supply the requirement that the indictment should allege the intent with which the respondent received the goods. It was held:

"By the use of the word 'feloniously' in the indictment the prosecutor charged the respondent with the commission of a grave crime. Bishop says, 1 New Crim. Law, § 427: 'Felonious,—standing alone, rather designates the grade of the crime—that it is "felony" in distinction from misdemeanor—than any particular form of the felonious intent. Yet, in a sort of general sense, it points to the intent which enters into a felony.' "

In *State* v. *Fordham*, 13 N. D. 494 (101 N. W. 888), the defendant was convicted of robbery. It was

contended on behalf of defendant that the information did not state the facts constituting a public offense in this, that it did not allege an unlawful intent, and *animus furandi;* and that felonious intent required the same allegation and proof as in larceny.    The court said:

"The defendant also urges that it was error to overrule his demurrer to the information upon the ground that it does not allege, directly or in substance, that the property was taken with intent to steal it.    Robbery is defined in the statute as 'a wrongful taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.'    The information in this case charges that the property was wrongfully and feloniously taken.    *    *    *    It is true that a taking with intent to steal is essential to constitute the crime of robbery, but the intent to steal is covered by the use of the word 'wrongful.'    'Wrongful,' in this connection, means not a mere taking without authority of law, but the word is to be construed in its most comprehensive meaning, and includes within its meaning a taking with an evil motive or with a criminal mind.    In this connection it is synonymous with 'felonious;' and it is well settled that the word 'felonious,' when used in defining the crime of robbery or larceny, implies an intent to steal. *People* v. *Moore,* 37 Hun (N. Y.), 84; *State* v. *Bush,* 47 Kan. 201 (27 Pac. 834, 13 L. R. A. 607) ; *State* v. *Hogard,* 12 Minn. 293; *State* v. *Rechnitz,* 20 Mont. 488 (52 Pac. 264) ; *People* v. *Ah Sing,* 95 Cal. 654 (30 Pac. 796)."

In *People* v. *Butler,* 1 Idaho, 231, the point urged against the indictment was that it nowhere showed: "the intent of the defendant to steal or rob."    The court held:

"This point is not well taken; we think the intent of the defendant to steal or rob clearly and sufficiently appears in the indictment.    It charges first a felonious assault upon the person robbed, by the defendant putting him feloniously in bodily fear, thereby the

felonious and violent robbing, taking and carrying away by defendant from his person of the property. The words 'felonious' and 'rob' carry with them the intent, and are sufficient."

In *State* v. *Rechnitz*, 20 Mont. 488 (52 Pac. 264), the court said:

"But the mental element of any larceny must, we think, be still marked by using the word 'feloniously,' or by equivalent words.   There must be accompanying the taking an evil intention.   It has been long settled that in an indictment for a common-law felony it is necessary to aver that the act charged to have been done was done 'feloniously.'   *   *   *   The word 'feloniously' is descriptive of the act charged.   It means that the act was done with a mind bent on doing that which is wrong, or, 'as it has been sometimes said, with a guilty mind.' "

We have examined the information with care, having in mind the provisions of the statute, and have examined the cases cited by counsel and many other cases, and we are of the opinion that the information fully informed defendants of the true nature of the charge and was sufficient in law.

It is claimed there was no competent evidence identifying defendants as the persons committing the robbery.   Mr. Chilson testified:

"I have seen the respondents Quigley and Hague, the more I look at them, the more I recall the incidents of the day, the more I believe them to be the men who came to the bank that day and robbed it.   *   *   *   Well, I confess, I gave more attention to the revolver than I did to the appearance of the men.   *   *   *   After the robbery the sheriff took me over to St. Joseph one day in the afternoon, I saw the two respondents, I didn't identify them positively.   My recollection of what occurred on the 18th day of March, then and now, is about the same.   When I saw the two men in jail I said I was not positive they were the men."

Defendant Hague then stood up and Mr. Chilson was asked:

"Q. Was there anything about this man here who just stood up that suggested either one of those men that held you up?

"A. Yes, sir, his general appearance. I was not positive about him; his general appearance is about the same. * * * I did not get a good look at the man in the bank, I looked at him a little, I looked at the revolver. * * * My best judgment today is that these men are the men that were in the bank."

There was other testimony of about the same general tenor. Such testimony was competent, and the weight to be given it was a question for the jury in view of all the other circumstances and the evidence in the case.

In *People* v. *Jennings*, 252 Ill. 534 (96 N. E. 1077, 43 L. R. A. [N. S.] 1206), it was insisted that certain testimony was inadmissible, because of the uncertain character of the identification. The court said:

"It is further insisted in this connection by plaintiff in error that the evidence of Halsted, Mrs. McNabb and Miss McNabb was inadmissible because of the uncertain character of the identification. A great deal has been written and said in the past concerning the doubtful nature of testimony identifying persons. Men's faces, like their handwriting, may be so similar that the keenest observer may be baffled in seeking to discover differences. 'The witness,' says Wharton, 'is asked how he knows that the prisoner at the bar is the person who fired the fatal shot, and his answer is, "I infer it from a similarity of eyes, of hair, of height, of manner, of expression, of dress." Human identity, therefore, is an inference drawn from a series of facts, some of them veiled, it may be, by disguise and all of them more or less varied by circumstances.' 1 Wharton on Crim. Evidence (8th Ed.), § 13. In his charge to the jury in the Tichborne case Lord Cockburn said: 'Frequently a man is sworn to who has been seen only for a moment. A man stops

you on the road, puts a pistol to your head and robs you of your watch or purse; a man seizes you by the throat, and while you are half strangled his confederate rifles your pockets; a burglar invades your house by night, and you have only a rapid glance to enable you to know his features. In all these cases the opportunity of observing is so brief that mistake is possible, and yet the lives and safety of people would not be secure unless we acted on the recollection of features so acquired and so retained, and it is done every day.' 2 Wharton on Crim. Evidence (8th Ed.), § 803, note; Jones on Evidence (2d Ed.), § 361. * * * This testimony was competent. The weight to be given it was a question for the jury, in view of all the other circumstances and evidence in the case,"

It is claimed by defendants that they were in Chicago at the time of the robbery and they introduced some supporting testimony, and it is now claimed the verdict is against the weight of the evidence. No motion having been made for a new trial we cannot pass upon such question.

It is urged that the charge of the court contained an expression of opinion that there was testimony tending to establish the fact that the defendants were in the bank on the day in question. The part of the charge complained of reads:

"It is for you to say under the evidence in the case whether or not the testimony of these witnesses sufficiently identifies these respondents in the commission of that crime."

But that was not all the court said upon that subject; the excerpt comes out of this:

"Now, it is claimed by the people that witnesses have appeared here who identify these two respondents as being the two men who came into the bank on that day. You, gentlemen of the jury, will remember the testimony of the witnesses who have appeared for the purpose of identifying these respondents. It is for you to say, under the evidence in the case, whether or not the testimony of these witnesses sufficiently identi-

fies these respondents in the commission of that crime. You have heard their testimony, you analyze it carefully, taking into consideration all the facts and circumstances in the case, and determine whether or not these respondents were the parties who went into the bank that day and committed the crime charged by the people."

There was no error in this. It is claimed that the court in the charge instructed the jury that if defendants were jointly engaged in disposing of the bonds and were both taking part in the attempt to dispose of them both parties were in possession of the bonds as a matter of law, and it is insisted that whether Hague was in possession of the bonds was a question for the jury. The court charged upon this subject:

"Now, it is also the claim of the people in this case, gentlemen of the jury, that some six days thereafter the 18th day of March, 1921, namely on the 24th day of March, 1921, these two respondents appeared at the banking house or brokerage house of Slaughter & Company, in the city of Chicago, somewhere near the stock yards, and that at that time they had in their possession the bonds which have been introduced in evidence, of the par value of $8,200 and offered to sell these bonds to the banking house. It is the claim of the people that those bonds which were in the possession of the defendants at that time were the same bonds, or part of the same bonds which were stolen from the bank on March 18th. In this connection I charge you, gentlemen of the jury, that the evidence discloses that upon the 24th day of March, 1921, these bonds were actually in the physical possession of the respondent Quigley, and that the respondent Hague was with him. I charge you as a matter of law that if Mr. Hague and Mr. Quigley were jointly engaged in the undertaking on that occasion of disposing of those bonds, if they were both interested in the disposal of those bonds, and were both taking part in the attempt to dispose of those bonds, then, as a matter of law, both parties were in possession of the bonds

on that occasion, and it does not matter that the bonds were actually, physically, in the possession of one of them. In law, if both were engaged in the common undertaking of the disposing of the bonds, then as a matter of law they would be in the possession of both of them."

This instruction left to the jury the question of fact involved and correctly stated the law. 25 Cyc. p. 140. The charge of the court relative to the possession of recently stolen property was without error, having in mind the evidence and the issues thereon left to the jury. *People* v. *Hogan*, 123 Mich. 233; *People* v. *Walters*, 76 Mich. 195; *People* v. *May*, 199 Mich. 574.

An effort was made by defendants to explain the possession of the stolen property but evidently this only led to further fasten the crime upon them. Possession of recently stolen property, accompanied by an active and hurried effort under an assumed name to dispose thereof is evidence to go to the jury upon the issue of whether the accused stole the same. The charge fairly and fully instructed the jury as to all the issues and gave the law applicable thereto.

We find no reversible error, and the convictions are affirmed.

STEERE, C. J., and STONE, CLARK, BIRD, and SHARPE, JJ., concurred. MOORE and FELLOWS, JJ., did not sit.