19 P.(2d) 749

STATE v. FORE et al.

No. 3753.

Supreme Court of New Mexico.

Feb. 27, 1933.

J. S. Vaught, of Albuquerque, for appellants.

E. K. Neumann, Atty. Gen., and Quincy D. Adams, Asst. Atty. Gen., for the State.

HUDSPETH, Justice.

Oran Fore and Jonas De Arman were convicted of the crime of robbery with dangerous weapons, and sentenced to the penitentiary. From the judgment and sentences they prosecute this appeal.

There is no controversy in regard to the commission of the offense. The material question upon which appellants' learned counsel, who did not try the case below, bas-

es points for reversal, is in respect to the identity of the persons perpetrating the crime.

On the night of December 22, 1929, a poker game was being held in a house in the town of Alamogordo. It had been in progress for four or five hours when, between 12 and 1 o'clock, two masked men, one armed with a shotgun and the other with two pistols, entered and ordered the players to throw up their hands and line up with their faces to the wall. About the time that the seven players had taken positions satisfactory to the robbers, who enforced their commands with curses and in some instances by means of punches with their firearms, the complaining witness, D. G. Potter, entered the poker room followed by Breezy Cox, the friend and associate of appellants in rodeo performances. The two of them were lined up alongside the players with their faces to the wall, and $186 taken off the person of Potter by the masked robbers. The poker players were in like manner relieved of valuable watches and of more than a thousand dollars in cash. Breezy Cox was suspected of being implicated in the enterprise.

De Arman, who had previously been convicted of a felony in Oklahoma, had come to Tularosa, a town some fifteen miles distant from Alamogordo, with Cox about three weeks before the crime was committed. They and their wives had taken up their residence in a rented cottage there. Tularosa had been the home of Fore for seven or eight years.

Potter testified that about 11:30 p. m. on the night of the robbery he went to the house where the poker game was being held; that shortly thereafter Breezy Cox entered the room and invited Potter to go with him to a place at the edge of town called the "Adobe" and have a drink; that he and Cox left the poker room together about midnight, walked down the street, and entered Breezy's car; that as they were about to start off, the appellant De Arman came up to the side of the car and asked Breezy: "Where is that place?" Breezy replied: "Right down there" (motioning). De Arman then asked: "How will I get in?" To this Cox replied: "Knock on the door and tell them it's Breezy." It appears from the testimony of the card players that the robbers gained entrance to the poker room by giving Breezy's name. Potter further testified that he recognized De Arman immediately upon re-entering the poker room after he and Cox had returned from the "Adobe," fifteen or twenty minutes after he had seen him at the side of Breezy's car. Potter had not known De Arman prior to that time.

Fidel Sanchez, one of the poker players, testified that he had played dominoes and poker with De Arman at Tularosa every day for a fortnight prior to the robbery, and he identified him positively as one of the two masked robbers.

The identification of appellant Fore was less positive. Several witnesses, victims of the robbers, who had known Fore for more than five years—some of them intimately—testified that he was, in their opinion, the other robber. Some testified that they recognized him by his voice, form, and by that

part of his face that was not covered by the mask. All of them on cross-examination admitted the possibility of mistake as to his identity.

Appellants' defense was an alibi. They admitted having been in Alamogordo on the night of the robbery, but testified that they had returned to Tularosa about 11:30 p. m. Witnesses for the defense testified that appellants engaged in a game of pitch at the Tularosa home of the sister-in-law of Fore from 11:30 p. m. to 12:30 a. m. Less than an hour later, De Arman, his wife, and the wife of Breezy Cox departed for Arizona, in order, it was said, that De Arman might reach Safford, their destination, before 1 p. m. of the 23d, when the lists of entrants for a rodeo which he wished to enter closed. They knew that they had a long all-night journey ahead of them, yet the hour prior to their departure was, according to the testimony of appellants' witnesses, spent playing pitch. Appellant Fore and his wife, it appears, left Tularosa before noon of the 23d, motored to El Paso, and thence to Las Vegas. There they remained a month. The sheriff, who sought the appellants on the 23d, failed to find either of them in Tularosa. De Arman was arrested some time later in Lawton, Okl., and Fore upon his return to Tularosa from Las Vegas.

■ We are unable to agree with the contention of appellants that the testimony of the state's eyewitnesses was insufficient to establish the identity of the appellants as the masked men who committed the robbery.

True, the testimony as to their identity represented, in the last analysis, merely the opinions of the witnesses. This, however, did not render it incompetent. Its probative value was for the determination of the jury.

■ The rule as to evidence of personal identity is stated in 16 Corpus Juris, p. 750, § 1537, as follows: "Provided he bases his testimony on his own knowledge and not on information furnished by another, the opinion, belief, judgment or impression of an ordinary witness as to the identity of a person or an object is competent evidence." An examination of the cases reveals much authoritative support for this proposition. Among the cases affirming it are: State v. Hopkirk, 84 Mo. 279; State v. Powers, 130 Mo. 475, 32 S. W. 984; State v. Barrington, 198 Mo. 23, 111, 95 S. W. 235; State v. Blackmore, 327 Mo. 708, 38 S.W.(2d) 32; Hopper et al. v. Commonwealth, 6 Grat. (Va.) 685; Thornton v. State, 113 Ala. 43, 21 So. 356; Williams v. State, 149 Ala. 4, 43 So. 720; State v. Harr, 38 W. Va. 58, 62, 17 S. E. 794; Woodward v. State, 4 Baxt. (Tenn.) 322; Kirby v. State, 43 Ga. App. 102, 158 S. E. 438; Craig v. State, 171 Ind. 317, 86 N. E. 397; Alford v. State, 47 Fla. 1, 36 So. 436; Mack v. State, 54 Fla. 55, 44 So. 706, 709, 13 L. R. A. (N. S.) 373, 14 Ann. Cas. 78; Jenkins v. State, 81 Tex. Cr. R. 508, 197 S. W. 588; Burks v. State, 97 Tex. Cr. R. 113, 260 S. W. 181; Morse v. State, 106 Tex. Cr. R. 520, 293 S. W. 568; Commonwealth v. Kennedy, 170 Mass. 18, 48 N. E. 770; People v. Hammond, 177 Mich. 416, 143 N. W. 244; People v. Quigley,

217 Mich. 213, 185 N. W. 787; State v. Elliott, 68 Wash. 603, 123 P. 1089; State v. Spadoni, 137 Wash. 684, 243 P. 854.

The reason for the rule is well stated in People v. Jennings, 252 Ill. 534 at page 545, 96 N. E. 1077 at page 1081, 43 L. R. A. (N. S.) 1206: "A great deal has been written and said in the past concerning the doubtful nature of testimony identifying persons. Men's faces, like their handwriting, may be so similar that the keenest observer may be baffled in seeking to discover differences. 'The witness,' says Wharton, 'is asked how he knows that the prisoner at the bar is the person who fired the fatal shot, and his answer is, "I infer it from a similarity of eyes, of hair, of height, of manner, of expression, of dress." Human identity, therefore, is an inference drawn from a series of facts, some of them veiled, it may be, by disguise and all of them more or less varied by circumstances.' Wharton on Crim. Evidence (8th Ed.) § 13. In his charge to the jury in the Tichborne Case Lord Cockburn said: 'Frequently a man is sworn to who has been seen only for a moment. A man stops you on the road, puts a pistol to your head, and robs you of your watch or purse; a man seizes you by the throat, and while you are half strangled his confederate rifles your pockets; a burglar invades your house by night, and you have only a rapid glance to enable you to know his features. In all these cases the opportunity of observing is so brief that mistake is possible, and yet the lives and safety of people would not be secure unless we acted on the recollection of features so acquired and so retained, and it is done every day.' Wharton on Crim. Evidence (8th Ed.) § 803, note; Jones on Evidence (2d Ed.) § 361."

■ The opinion of the witness need not be based upon a recognition of face and features; it may be based upon the voice, size, gait, and movements of the person whose identity is in question. Burks v. State, State v. Hopkirk, Mack v. State, supra. For, as the court in the Mack Case, quoting from a dissenting opinion in Patton v. State, 117 Ga. 230, 43 S. E. 533, points out: "It is probably true, in the experience of every man that he has on numerous occasions recognized voices, faces, or figures when he could not, had his life depended on it, have told by what means he recognized them; the only thing of which he was certain was that he did recognize them. So subtle are the workings of the human mind, so elusive the landmarks by which the consciousness guides itself, so fleeting and momentary the touches upon the waxen scroll of memory, that oftentimes all we have left of the mental operation is its net result. We have reached a point, surely and safely; but for the life of us we cannot tell over what road we traveled. Who is it that has not heard a voice, with nothing definitely peculiar about it, which he would yet be willing to swear to if he heard it again?"

None of the witnesses for the state in the instant case positively identified Fore as one of the masked robbers. However, it does not follow from this circumstance that the evidence on the point was insufficient, as a

matter of law, to make the question of his guilt one for the jury, or to sustain their verdict. See Craig v. State, 171 Ind. 317, 86 N. E. 397; People v. Quigley, 217 Mich. 213, 185 N. W. 787; State v. Blackmore, 327 Mo. 708, 38 S.W.(2d) 32, 35.

In State v. Blackmore, the appellants, who had been convicted of robbery, contended on appeal that the evidence was insufficient to sustain their conviction. There, as here, there was no controversy as to the commission of the offense. The claimed insufficiency was as to the identity of appellants as participants in its commission. The court sustained the conviction, although no witness had positively identified either defendant as one of the men seen at the robbery. The evidence as to the identity of the defendants in that case was far weaker than the evidence in the case at bar, yet the court held it sufficient to make the question of their guilt one for the jury, saying: "Identification by witnesses of a person they have seen but once before, perhaps in a moment of excitement, is necessarily more or less a matter of opinion. Some witnesses will express that opinion in the form of a positive conviction, perhaps feel convinced, while others more conservative will only express a belief. The trier of the facts, in the light of all the circumstances and evidence, must determine the question."

Counsel for appellants contends that the trial court should have instructed the jury to disregard the testimony of witnesses who testified they recognized Fore as one of the robbers, not at the time of the holdup, but shortly thereafter, when somebody mentioned Fore's name. We are unable to sustain this contention. It appears from the record that these witnesses testified that their recognition of Fore was based upon his voice, form, and movements; their recollection of the *name* of the man they so recognized was refreshed by conversation among themselves. Their opinions as to his identity, based upon their recollection of the person seen, were admissible. The fact that the opinions were not completely formed at the time the person sought to be identified was seen does not render them incompetent as evidence. See Woodward v. State, 4 Baxt. (Tenn.) 322, 325.

There is substantial evidence to support the verdict as to both appellants. We have given this case the consideration which its importance to appellants and the public demands, and find no error for which there should be a reversal.

The judgment will therefore be affirmed. It is so ordered.

WATSON, C. J., and SADLER, BICKLEY, and ZINN, JJ., concur.