631 P.2d 1324

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**David LOPEZ and Lorenzo Flores, Defendants-Appellants.**

**No. 4858.**

Court of Appeals of New Mexico.

June 4, 1981.

Certiorari Denied July 24, 1981.

Larry R. Hill, Alamogordo, for defendants-appellants.

Jeff Bingaman, Atty. Gen., Santa Fe, Marcia E. White, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Judge.

Flores was convicted of aggravated assault with a firearm, aggravated battery with a firearm and conspiracy. Lopez was convicted of aggravated assault, aggravated battery and conspiracy. Sections 30–3–2 and 30–3–5, N.M.S.A. 1978, §§ 30–28–2 and 31–18–16, N.M.S.A. 1978 (1980 Cum. Supp.). They appeal. We discuss (1) the jury selection process, and (2) answer other issues summarily.

*Jury Selection Process*

Defendants are members of the political party, La Raza Unida. Defendants challenged the selection of names for possible service as a juror (the jury wheel), because no members of that party were among the names selected; the result was that no member of that party was included in the panel from which the trial jury was selected.

There is no claim that the statutory procedure was not followed. The clerk of the district court testified that she randomly selected thirty-five percent of the names appearing in the pollbooks for each voting division in the last general election. Section 38–5–3, N.M.S.A. 1978. Those names were placed in the jury wheel. Section 38–5–4, N.M.S.A. 1978. The names on the jury panel were taken from the jury wheel.

The pollbooks contain the names of those persons who voted. Sections 1–12–10 and 1–12–11, N.M.S.A. 1978. If no member of La Raza Unida voted in the last general election, then under the procedure for selecting names for the jury wheel, no member's name could be included in the jury wheel.

Defendants claim that the method of selecting names for the jury wheel deprived them of a fair cross-section of the community in violation of the Sixth Amendment to the Constitution of the United States. This claim has two parts; the absence from the jury wheel of (1) names of La Raza Unida members, and (2) names of persons registered to vote but who did not vote in the general election.

*Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), dealt with a Louisiana jury selection system which did not "disqualify women from jury service, but in operation its conceded systematic impact is that only a very few women, grossly disproportionate to the number of eligible women in the community, are called for jury service." Fifty-three percent of the persons eligible for jury service in the two parishes involved were women; not more than ten percent of the names in the jury wheel of one of the parishes were women. This disparity resulted because of a provision in the Louisiana Constitution which provided that no woman should be called for jury service unless she had filed a written declaration of her desire to be subject to jury service. *Taylor* held

that the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial.

\*     \*     \*     \*     \*     \*

[E]xcluding identifiable segments playing major roles in the community cannot be squared with the constitutional concept of jury trial \* \* \*.

[T]he fair-cross-section requirement is violated by the systematic exclusion of women, who in the judicial district involved here amounted to 53% of the citi-

zens eligible for jury service. This conclusion necessarily entails the judgment that women are sufficiently numerous and distinct from men * * *.

Missouri provided an automatic exemption from jury service for any woman requesting not to serve. In a county where fifty-four percent of the adult inhabitants were women, *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), held that the automatic exemption for women amounted to a systematic exclusion of women because jury venires averaged less than fifteen percent female, in violation of the fair-cross-section requirement. *Duren*, supra, states:

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

The above requirement is not unrelated to the requirement of showing an equal protection violation. *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), stated that to show an equal protection violation,

> the defendant must show that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs. The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied.

■ Defendant made a showing that La Raza Unida members were excluded, but this exclusion was not the exclusion of La Raza Unida members as a group. The exclusion was of persons registered to vote who did not vote. There being no showing of the exclusion of La Raza Unida members because they were members of that party, the claim based on the absence of La Raza Unida members fails.

■ Our concern is with the exclusion from the jury wheel of the names of persons who were registered to vote, but who did not vote. Are such persons a distinct group in the community?

Both *Taylor v. Louisiana*, supra, and *Duren v. Missouri*, supra, dealt with women eligible to serve as jurors as a distinctive group; neither case attempted to define "distinctive group". Some courts have used the phrase "cognizable group". *United States v. Warinner*, 607 F.2d 210 (8th Cir. 1979), considered a claim that the jury panel did not represent a fair cross-section because it consisted only of registered voters. Defendants argued that nonregistered voters constituted a "distinctive group". *Warinner* held that nonregistered voters did not constitute a "cognizable group". See *State v. Gretzler*, 126 Ariz. 60, 612 P.2d 1023 (1980). Thus, we make no distinction between "distinctive group" and "cognizable group"; nor did the court in *United States v. Test*, 550 F.2d 577 (10th Cir. 1976).

Discussing the alleged underrepresentation of a "distinctive" or "cognizable" group, *United States v. Test* stated:

> To establish cognizability, it is necessary to prove the following:
> "(1) the presence of some quality or attribute which 'defines and limits' the group; (2) a cohesiveness of 'attitudes or ideas or experience' which distinguishes the group from the general social milieu; and (3) a 'community of interest' which may not be represented by other segments of society."

We do not suggest that this definition is exclusive; there may be fact situations which may require its modification. It is, however, a sufficient definition under the facts of this case.

*United States v. Blair*, 493 F.Supp. 398 (D.Md. 1980), held that age alone and that

non-federal employees did not constitute distinct groups, and that it was doubtful that either black males (as opposed to blacks generally) or the "less advantaged" (by employment and education) constituted distinct groups. *United States v. Coats*, 611 F.2d 37 (4th Cir. 1979), states:

> The only showing here is that persons who failed to vote in the 1976 general election were excluded from consideration for jury duty. Absent a demonstration that some cognizable group has thereby been systematically excluded or substantially underrepresented, this type of exclusion does not violate constitutional principles.

Defendants offered no proof that registered voters who did not vote were a "distinctive" or "cognizable" group. The jury selection claim is without merit.

*Issues Answered Summarily*

We answer the following issues summarily because defendants' contentions as to these issues do not accurately reflect what happened in the trial court. Defendants either ask this Court to find the facts, which we do not do as a court of review, or ignore matters adverse to their appellate position. See N.M.Crim.App. 501(a)(3).

■ (a) Defendants claim the evidence was insufficient to sustain the convictions. We disagree. The victim, a police officer going off duty, testified that a car driven by Lopez, and in which Flores was a passenger, drove slowly by as the victim exited the police station. Going to his car in the parking lot, the victim noticed that the car driven by Lopez stopped nearby and that someone got out of the car. As the victim started up his car he noticed two persons walking toward him, one of which was Flores. These two persons ducked into some bushes and as the victim was driving out of the parking lot, Flores raised up with something in his hands. The victim threw himself to the floor of his car as the first charge was fired from a shotgun through the driver's window of the victim's car.

Either shotgun pellets or glass broken by the pellets struck the victim in the left hand. Thereafter, two more shots were fired into the victim's car.

Lopez' car was nearby when the shooting occurred; when booked, Lopez had two unfired shotgun shells in his possession. These two live shells were of the same color, gauge and size and were made by the same manufacturer as the three spent shotgun shells recovered at the scene. The two live shells bore extraction marks indicating they had been removed from the same gun as the three spent shells. Prior to the shooting, Flores had remarked that " 'we have to shoot some cops.' "

Defendants do not claim that the evidence failed to establish the three crimes of which they were convicted. Their claim is that, with the exception of the victim, the evidence is circumstantial and that the victim's testimony should not have been believed. That a portion of the evidence was circumstantial does not alter the rule that a verdict in a criminal case will not be set aside if supported by substantial evidence. *State v. Adams*, 89 N.M. 737, 557 P.2d 586 (Ct.App. 1976). The credibility of the victim was for the jury as fact finder; not this Court. *State v. Barber*, 93 N.M. 782, 606 P.2d 192 (Ct.App. 1979). We view the evidence in the light most favorable to the verdict of conviction, *State v. Lankford*, 92 N.M. 1, 582 P.2d 378 (1978), and determine whether there is sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt with respect to every element essential to a conviction. *State v. Carter*, 93 N.M. 500, 601 P.2d 733 (Ct.App. 1979). The evidence was sufficient to sustain each of the convictions.

■ (b) The eleventh witness called by the State in its case-in-chief was Detective Valdez. He testified that he remained with Lopez' car until it was taken to a storage yard and sealed as to the chain of possession of the shotgun shells, as to the lighting conditions during the search at the scene of

the shooting, and the distance from the victim's car to where the spent shells were found.

On cross-examination, Valdez admitted that prior to his testimony he was with a group of other officers who *had* testified, that there was conversation about the case. After the State had presented four additional witnesses and rested its case-in-chief, defendants moved for a mistrial on the basis that Valdez had violated the trial court's admonition to witnesses not to discuss the case. See Evidence Rule 615.

Apart from the untimeliness of defendants' motion, the trial court did not err in denying the mistrial motion. Defendants made no effort to show what the officers were discussing or whether it related in any way to the substance of Valdez' testimony. In light of the contents of Valdez' testimony, there is no basis for holding the trial court abused its discretion in denying the motion. *State v. Ortiz*, 88 N.M. 370, 540 P.2d 850 (Ct.App. 1975); *State v. Kijowski*, 85 N.M. 549, 514 P.2d 306 (Ct.App. 1973).

■ (c) A witness who testified to the " 'we have to shoot some cops' " remark, stated that Flores made the remark in a telephone conversation. Defendants objected that there was insufficient foundation that Flores was the person speaking on the telephone. We disagree. The witness testified that he recognized that it was Flores' voice; in addition, the content of the conversation, which went to a request the witness had made to Flores, was sufficient to show that it was Flores. *State v. Wesson*, 83 N.M. 480, 493 P.2d 965 (Ct.App. 1972); see *State v. Fore*, 37 N.M. 143, 19 P.2d 749 (1933).

■ (d) Prior to the shooting in this case there had been an incident, at El Palacio, between Lopez and the victim. Trial testimony developed conflicting theories— that defendants were out to "get" the victim, and vice versa. This resulted in an issue as to whether Lopez or the victim started the El Palacio incident. The State called Gurule as a rebuttal witness. On direct examination, Gurule was asked to tell *what happened* at El Palacio. Gurule's answer was nonresponsive; the answer was that Lopez was drunk and Gurule smelled marijuana on Lopez. This answer was stricken and the jury admonished to disregard it. Defendants also asked for a mistrial, which was denied. Refusing to declare a mistrial because of the nonresponsive answer was not error; the admonition was sufficient. See *State v. Brewster*, 94 N.M. 783, 617 P.2d 172 (Ct.App. 1980); *State v. McFerran*, 80 N.M. 622, 459 P.2d 148 (Ct.App. 1969); compare *State v. Ruffino*, 94 N.M. 500, 612 P.2d 1311 (1980).

(e) Various claims are made as to prosecutor misconduct. None have merit.

■ (1) Defendants claim that the district attorney prosecuted this case for improper purposes—either because defendants were members of, or associated with, La Raza Unida, or because the parents of Lopez did not vote for the district attorney. This disregards the substantial evidence of defendants' guilt and the duty of the district attorney to prosecute. The record shows a prosecution for a proper purpose— substantial evidence of defendants' guilt.

■ (2) Lopez was cross-examined about an automobile collision investigated by the victim and about the El Palacio incident. On direct examination, Lopez had been asked about *all* his prior experiences with the victim. The cross-examination was proper.

■ (3) Flores was cross-examined as to his activities with La Raza Unida. It was not, as defendants contend, "inflammatory editorializing against" the party, nor was it editorializing in any form. The questioning was proper cross-examination, being within the scope of Flores' direct examination.

(4) In cross-examining Flores, the prosecutor did not misquote the testimony of witness Leach.

■ (5) Asked whether he had said, " 'Let's man the battlefield' ", Flores denied

making such a statement. The prosecutor then asked, " 'These days it's not "battlefield," it's "gorilla [sic] warfare"?' " Objection to the question was sustained and the jury was instructed to disregard the question. This question, unanswered, does not require reversal for a new trial; under the circumstances of this case the admonition was sufficient. *State v. Brewster*, supra; *State v. McFerran*, supra.

■ (6) No record of the attorney's closing arguments was made. Defendants sought a mistrial on the basis that one of the prosecutors had improperly characterized the evidence. The prosecutor argued there had been no improper characterization. Absent a record, or some agreement as to what was said, we cannot determine whether the evidence was improperly characterized. See *State v. Carrillo*, 88 N.M. 236, 539 P.2d 626 (Ct.App. 1975). Further, the trial court admonished the jury as to the evidence in a manner favorable to defendants. The failure to grant a mistrial was not error.

The judgment and sentences are affirmed.

IT IS SO ORDERED.

ANDREWS, J., concurs.

HENDLEY, J., concurs specially.

HENDLEY, Judge (specially concurring).

I concur in the result reached by the majority as to the first issue and concur in the issues answered summarily.

Defendants objected to the absence of La Raza Unida members on the jury venire. It was defendants' contention that La Raza Unida members were systematically excluded from the jury wheel because they did not vote in the previous general election because there were no La Raza Unida candidates in that election. The clerk of the court testified that names for the jury wheel were drawn from the poll books. The poll books contain the names of persons who voted in the last general election.

They do not contain a party designation. The clerk of the court did not know whether or not any members of La Raza Unida had voted in the last general election or if any were on the jury wheel. Thus, there is no showing on the record that La Raza Unida members were systematically excluded by the jury selection procedure. Defendants had the burden of making such a showing. *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

Defendants did not object to the absence of non-voters on the jury wheel. Defendants suggested that La Raza Unida members would have been included on the jury wheel if potential jurors were drawn from lists of registered voters. That, however, did not amount to an objection to the exclusion of non-voters on the jury wheel. Whether or not non-voters are a "distinctive" group in the community is an issue not properly before this court. *Santa Fe Nat. Bank v. Galt*, 94 N.M. 111, 607 P.2d 649 (Ct.App. 1979); *Maldonado v. Haney*, 94 N.M. 335, 610 P.2d 222 (Ct.App. 1980). On that question I express no opinion. The theory upon which defendants relied at trial may not be changed on appeal, *Adoption of Doe*, 89 N.M. 606, 555 P.2d 906 (Ct.App. 1976), and even if allowed, there is nothing in the record to support such a theory.

I would affirm the trial court's ruling.