780 P.2d 1148

**STATE of New Mexico, ex rel. Hal STRATTON, Attorney General, Petitioner,**

v.

**Hon. Patricio SERNA, District Judge, Respondent,**

and

**Chief Public Defender, Intervenor.**

No. 18638.

Supreme Court of New Mexico.

Oct. 12, 1989.

Hal Stratton, Atty. Gen., Stephen Westheimer, Deputy Atty. Gen., Elizabeth Major, Asst. Atty. Gen., Santa Fe, for petitioner.

Billy R. Blackburn, Albuquerque, Jim D. James, Santa Fe, for real parties in interest.

Jacquelyn Robins, Chief Public Defender, Sheila Lewis, Asst. Appellate Defender, Santa Fe, for intervenor.

Jones, Snead, Wertheim, Rodriguez & Wentworth, Jerry Wertheim, Steven L. Tucker, Lorenzo F. Garcia, Santa Fe, for Chama Land & Cattle Co. amicus curiae.

## OPINION

BACA, Justice.

In 1989 the legislature enlarged the pool of prospective jurors in New Mexico by amending NMSA 1978, Section 38-5-3(A) (Repl.Pamp.1987) to add driver's license holders to the existing pool of registered voters. The question before the court is when did the legislature intend the broadened jury pool to take effect; ninety days after the adjournment of the legislature when laws generally are implemented or ninety days after the next general election as *specified in the statute?* We find that the broadening of the jury pool is mandated ninety days after the next general election. We therefore find for the state.

## NATURE OF THE ACTION

This action is before the court on an original proceeding of superintending control. N.M. Const. art. VI, § 3. The issue of superintending control arose within the criminal case of *State v. Mitchell, Shoemaker & Bella,* No. SF 88-376(CR). On August 11, 1989, defendant Mitchell filed a motion to quash the jury panel as invalid because it did not include prospective jurors drawn from the driver's license list. Defendant argued that the amended Section 38-5-3(A) took effect June 16, 1989, and therefore, the jury pool should have been expanded as of that date. The New Mexico Constitution provides that, unless there is an emergency provision, laws "go into effect ninety days after the adjournment of the legislature enacting them." N.M. Const. art. IV, § 23. District Judge Patricio Serna granted the motion to quash. The state, through the attorney general's office, petitioned this court for a writ of superintending control, naming the Honorable Patricio Serna as respondent. The state asked this court to quash Judge Serna's order of August 14, 1989, and direct him to proceed to trial with the existing jury panel. The state argued that the statute specifically dictates delaying the expansion of the jury pool until ninety days after the next general election.

## ISSUES

One question alone exists at the heart of this controversy—*when* did the legislature intend its enlargement of the prospective jury pool to have practical application statewide. It is helpful to analyze this question in three sub-parts:

1) What was the legislature's purpose in enacting this amendment and what was the language used to achieve this purpose?

2) How is this case distinguished from *State ex rel. Maloney v. Neal,* 80 N.M. 460, 457 P.2d 708 (1969)?

3) What constitutional implications, if any, result from the court's interpretation of the amendment?

## PRACTICAL PURPOSE AND PLAIN LANGUAGE OF THE AMENDMENT

█ The practical purpose of amending Section 38-5-3(A) was to enlarge the jury pool to ensure that a broader cross section of New Mexico citizens sit in jury panels across the state. Requiring immediate selection from lists that do not yet exist would negate this goal and hobble the judi-

cial system. The ultimate result would be a complete shutdown in jury selection throughout the state until such lists were created. This is contrary to the legislative intent, exemplified by specific language in the statute mandating a longer time to prepare these lists.

The language of the amended statute reads:

**38–5–3. Poll books; driver's license holders; source for juror selection.**

A. Each county clerk shall preserve and make available to the district courts, until no longer needed for this purpose, the poll books from the general election last held in the county. *The motor vehicle division of the taxation and revenue department shall make available to the district courts a list of the driver's license holders in the county.* The clerk of the district court for each county **within ninety days following the general election,** shall select from the names of voters enrolled on the poll books of every voting division in the county *and from the list of driver's license holders* the persons to serve as potential jurors for grand jury and petit jury service during the **following two years.** [Amended language underlined, emphasis added.]

NMSA 1978, § 38–5–3(A) (Cum.Supp.1989).

■ The plain language in this statute is clear. Statutory language should be interpreted literally. Where there is no ambiguity, there is no room for alternative interpretation. *State v. Elliot,* 89 N.M. 756, 757, 557 P.2d 1105, 1106 (1977). This statute was amended, not repealed. The amended language must be read within the context of the previously existing statute. Taken as a whole the old and the new language comprise the presently controlling statute and manifest the legislative intent. *Atencio v. Board of Educ.,* 99 N.M. 168, 171, 655 P.2d 1012, 1015 (1982).

■ The statute indeed took effect on June 16, 1989; however, there was no language that invalidated the existing jury pools at that time. The legislature did not amend the effective date for ninety-day, post-election jury pool selection. This clearly expresses the legislature's intent that jury pool selection continue to be renewed ninety days after every general election.

## DISTINGUISHED FROM MALONEY

Respondent argues that *State ex rel. Maloney v. Neal,* 80 N.M. at 460, 457 P.2d at 708, demands an immediate expansion of the jury pool. This argument misconstrues the historical and legal basis for that decision. The underlying situations in *Maloney* and this case are quite different.

*Maloney* dealt with the repeal of the jury pool in 1969. The new replacement statute had language similar to the statute now at issue. The statute directed the court clerks to select prospective jurors within ninety days following the general election; however, **it also contained an effective date of July 1, 1969.** The court in *Maloney* found that the new statute must be put into effect on the specified effective day of July 1, and that the ninety-day language should have future application. Two strong characteristics distinguish *Maloney* from this situation:

1) The previous statute was repealed, leaving a void if the new statute was not put into effect;

2) An effective date of July 1, 1969, was specified in the legislation.

In *Maloney* the legislature completely repealed the previous jury pool selection statute. Prior to *Maloney* the jury pool was composed of jurors selected individually and deliberately by commissioners from specific groups of **active** registered voters. The legislature found this to be discriminatory and repealed it. It enacted a new statute that used all registered voters selected randomly as the pool. The new statute stated in part: "The method of selection shall be at random and in a manner to provide that no discrimination is exercised * * *." NMSA 1953, § 19–1–3.

Because the prior jury pool was invalidated, the court found that the new jury selection pool must go into effect at the specified effective date, July 1, 1969. The repeal of the statute created a void that had to be filled, or no juries could have been

selected at all. The legislative intent was plain—the statute had to take effect on this date, despite the statutory language directing jury pool selection ninety days after each subsequent general election. The court in *Maloney*, in an effort to give effect to both dates mentioned, found the ninety-day language to be directory and to have only **future application.**

The ninety-day language must logically be applied now. In *Maloney* there was no valid pool from which to select jurors when the statute took effect. In the present situation, a valid jury pool was simply expanded; this is a very different situation from *Maloney*. A valid jury pool existed prior to the 1989 amendment and still exists. Following the legislature's directory language by continuing to renew jury lists ninety days after every general election will continue the logical, sequential method the legislature has specified for selecting jury pools. That language cannot be disregarded and *Maloney* itself directs that it be applied in future cases.

## CONSTITUTIONAL ISSUES

■ The Constitution of the United States guarantees the right to an impartial jury. U.S. Const. amend. VI. This jury should be made up of a fair cross section of the community. Three elements are necessary to establish a prima facie violation of the fair cross-section requirement. They are:

1) The group excluded from the jury pool is a *distinctive* group in the community;

2) The underrepresentation of this distinctive group is unreasonable and unfair in proportion to the number of such a group in the community; and

3) The underrepresentation is due to systematic exclusion.

*Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979); *State v. Lopez*, 96 N.M. 456, 459, 631 P.2d 1324, 1327 (1981).

■ Citizens who have driver's licenses but who do not vote are not a distinctive group in the community. A distinctive group must possess some quality or attribute which defines and limits the group. The group must have a cohesiveness of philosophy which distinguishes it from the general population, and finally, the group must possess a community of interest which may not be represented by other segments of society. *Id.* at 459, 631 P.2d 1324; *United States v. Test*, 550 F.2d 577 (10th Cir.1976). Driver's license holders that are not registered to vote do not fall within this definition of a "distinctive group"; they are a vast array of people whose only cohesive characteristic lies in their possession of a driver's license. Having found no distinctive group, we need not concern ourselves with the last two elements in the *Duren* criterion.

■ In *State v. Barnett*, 85 N.M. 404, 512 P.2d 977 (1973), the New Mexico Court of Appeals found that a wait of two years to enlarge the jury pool to include newly enfranchised persons between the ages of eighteen and twenty-one years did not deprive defendants of their due process rights. Similarly, following the legislature's intent to enlarge the jury pool ninety days after the next general election does not violate defendants' constitutional rights. A valid jury pool exists.

We reverse the order of the trial court quashing the jury panel and direct the trial to proceed.

IT IS SO ORDERED.

LARRABEE, J., concurs.

RANSOM, J., specially concurs.

RANSOM, Justice (specially concurring).

I agree with the result reached by the majority. Given the difference in purpose of the fundamental reform effected by the 1969 replacement law considered in *Maloney*, as compared to the minor changes effected by the 1989 amendments to that law, I believe the Court correctly has concluded that the plain meaning of the statute should control the outcome of this case. I file this special concurrence only to express certain views not entirely in accord with those of the majority.

There has been no factual showing that, had the state promptly implemented the statute as urged by intervenors, the judicial system would have been hobbled. In any event, had the legislature intended implementation ninety days after adjournment (i.e., June 16, 1989), this Court would be bound to give effect to that intent. I agree the legislature did not intend immediate implementation.

At oral argument, counsel for intervenors stated that, had she not read *Maloney* in briefing the issues on the petition before us today, she would have concluded that the statute was to be implemented as provided by its express terms—within ninety days of the next general election. Nonetheless, intervenors argued strenuously that the legislature must be presumed to have read and understood *Maloney*. They urge a rule of statutory construction that would subordinate the "plain meaning" of the statute to the "special meaning" supplied by *Maloney*. We are asked to presume that the legislature considered *Maloney* to require immediate implementation of the statute despite its plain meaning.

As noted by Karl Llewellyn many years ago in a famous article, in almost every case it is possible to juxtapose with a given canon of statutory construction a counterpart that would lead to the opposite result. For every thrust there is a parry. Llewellyn, *Theory of Appellate Decision and the Rules or Canons About How Statutes Are to be Construed,* 3 Vand.L.Rev. 395 (1950). It follows that we must be guided by our practical understanding as well as by formal rules when construing legislation. Without evidentiary support, it strains credulity to believe the legislature studied *Maloney* and concluded that, despite the general election provision, any intent to implement the amendment immediately would be carried out absent a clear and simple statement to that effect.

Finally, as I understand intervenors' constitutional argument, once the legislature has set up a jury selection system, there exists a constitutional right to have one's jury selected in accordance with that system. Without venturing an opinion on the merits of this argument, I note that it logically depends on our interpretation of when the legislature intended that the statute under consideration be implemented. Having decided that the legislature did not intend for clerks to be required to select driver's license holders for jury lists until ninety days after the next general election, we need not reach the constitutional issue raised.