## Walter Earles v. The State.

No. 3787. Decided November 20, 1907.

**1.—Manslaughter—Evidence—External Appearance of Defendant—Opinion of Witness.**

Upon trial for murder there was no error in permitting the State to show on cross-examination of defendant's witness, that after deceased arrested defendant they went off peacefully without any trouble. The appearance of defendant as to whether he was angry was a legitimate matter for inquiry, and it was not an opinion of the witness to testify to same.

**2.—Same—Evidence.**

On trial for murder, there was no error in permitting the State on cross-examination of defendant to ask him why he stopped off on his journey in the town where the homicide occurred.

**3.—Same—Bill of Exceptions.**

Where upon appeal from a conviction of manslaughter, the bill of exceptions was wholly defective in that no answer of the witness was shown thereby, the question by the State on cross-examination of defendant as to whether he had a pistol at a certain time and place could not be considered.

**4.—Same—Evidence—Immateriality of Testimony.**

Where upon trial for murder the court sustained an objection made by the State as to whether defendant's witness had a conversation with a certain party at a certain time, the defense claiming that this matter had been drawn out by the State, and the court certified that there had been no attempt by the State to show that such conversation did not occur, there was no error in sustaining the State's objection.

**5.—Same—Evidence—Deadly Weapon.**

On trial for murder there was no error to permit a deputy sheriff, who held such office for a number of years to testify that the pistol used in the homicide was a thirty-eight-caliber and a deadly weapon.

**6.—Same—Evidence—Arrest—Declaration of Third Parties.**

Upon trial for murder where the evidence showed that deceased was an officer and according to the State's theory had arrested the defendant either for disturbing the peace or carrying a pistol, without warrant, on information received from other officers of the law, there was no error in permitting such other officers to testify to these facts, and that they had so informed the deceased, and that the latter was to make the arrest upon such information; such conversation among the officers out of the presence of defendant does not come within the rule of excluding declarations of third parties in the absence of the accused, and was admissible.

**7.—Same—Evidence—Rebuttal—Bill of Exceptions.**

A bill of exceptions which did not state the testimony objected to, was defective; besides, the sheer fact that such testimony was not in rebuttal would not, make it inadmissible. The court certifies that the testimony was in rebuttal, and there was no error.

**8.—Evidence—Harmless Error.**

On a trial for murder there was no error in permitting a State's witness to testify that he met deceased at a certain place on the day of the homicide and had a conversation with him about arresting defendant, and that witness did not tell deceased what he wanted to arrest defendant for, as such testimony was admissible, and if not was harmless.

**9.—Same—Evidence—Probing Wound.**

On a trial for murder where the State introduced testimony with reference to the probing of the wound in deceased's body by the undertaker, and the witness who gave his testimony stated that he knew nothing about the nature of the probing of this wound, there was no error in sustaining the State's objection to the cross-examination by defense to having the witness state at what angle the probe was working; unless the witness could state that it was following the wound.

**10.—Evidence—Character of Deceased.**

Where upon trial for murder the evidence showed that defendant and deceased were strangers; that deceased had made no threats against defendant, there was no error in excluding testimony of the general reputation of deceased as a violent and dangerous character; the defendant not having any knowledge of such character.

**11.—Same—Evidence—Arrest Without Warrant.**

Where upon trial for murder the evidence showed that defendant killed deceased after being arrested by him for unlawfully carrying a pistol, there was no error in the refusal of the court to strike out and exclude all the testimony in support of the State's theory that the deceased arrested defendant for unlawfully carrying a pistol, because the testimony did not show that deceased so informed the defendant at the time of his arrest; besides the verdict being for manslaughter shows in itself that the jury did not believe that the arrest was legal, and there was no error.

**12.—Same—Evidence—City Ordinance—Special Charter.**

On trial for murder where the evidence showed upon the State's theory that defendant killed deceased, a policeman, after being arrested by him for disturbing the peace or unlawfully carying a pistol, there was no error in permitting the State to introduce in evidence the special charter of the city and the ordinances thereunder authorizing a policeman of said city to make an arrest for such offenses without warrant; besides such testimony could not have injured defendant's rights, as the verdict was for manslaughter and thus supported appellant's theory of illegal arrest.

**13.—Same—Continuance—Bill of Exceptions.**

Where upon appeal the record showed that appellant failed to reserve a bill of exceptions to the overruling of his motion for continuance, the matter could not be considered on appeal.

**14.—Same—Charge of Court—Illegal Arrest—Question of Fact.**

Where upon trial for murder the evidence showed upon the State's theory that defendant killed deceased after the latter had arrested him for a violation of the city ordinance, and the defendant claimed that said arrest was illegal for various reasons, and the theory of the State was that deceased as policeman had the right to make the arrest without warrant, and the evidence was conflicting upon this issue, it was the duty of the court to define illegal arrest and submit the evidence upon this issue to the jury. The court did this and there was no error.

**15.—Same—Illegal Arrest.**

On trial for murder where the evidence showed that defendant killed deceased

while the latter had him under arrest, and the evidence was conflicting as to whether said arrest was legal or illegal, the defendant had a right to resist an illegal arrest, even when the facts showed that he did not know whether the arrest was illegal, and where the court submitted a charge in accordance with this rule there was no error. Brooks, Judge, dissenting as to this rule.

Appeal from the District Court of Ellis. Tried below before the Hon. F. L. Hawkins.

Appeal from a conviction of manslaughter; penalty, four years imprisonment in the penitentiary.

A statement of this case will be found in the previous appeal to this court. See 47 Texas Crim. Rep., 559.

*J. T. Williams*, for appellant.—Acts or declarations, transpiring between other parties in the absence of the defendant and about which the defendant has no knowledge, are not admissible in evidence against him. Thompson v. State, 30 Texas Crim. App., 325, 328; Williams v. State, 30 Texas Crim. App., 429, 447; Fuller v. State, 30 Texas Crim. App., 564; Wilson v. State, 41 Texas Crim. Rep., 115; Johnson v. State, 22 Texas Crim. App., 206, 224; Tyler v. State, 11 Texas Crim. App., 388 (see the rule) Simpson v. State, 48 Texas Crim. Rep., 328; 13 Texas Ct. Rep., 501; Barton v. State, 49 Texas Crim. Rep., 121; 14 Texas Ct. Rep., 855; Patrick v. State, 9 Texas Ct. Rep., 530.

Upon a trial for murder of an officer, where the defense of illegal arrest was urged as adequate cause to reduce the homicide to manslaughter or self-defense and the right to use force sufficient to successfully resist the illegal arrest and to free one's self from it and regain liberty; and it is clearly shown that deceased had no warrant for the arrest of defendant, then it is incumbent upon the State to affirmatively show the circumstances under which the deceased had the right to arrest defendant without warrant. Brown v. Wallis, 100 Texas, 546; 18 Texas Ct. Rep., 320; King v. Brown, 100 Texas, 109; 16 Texas Ct. Rep., 189.

All the authorities require that when an officer undertakes to make an arrest without warrant, he must disclose his authority for making the arrest, and inform the party of what offense he is being arrested for (see full discussion of the principle in Montgomery v. State, 43 Texas Crim. Rep., 304; 3 Texas Ct. Rep., 497), and it is elementary, that when defendant shows there was no warrant, the State must then show the circumstances under which the officer had authority to make the arrest without warrant. And it is absolutely necessary and essential that the officer who attempts to make an arrest without warrant must inform the party of the accusation against him. Unless this is done, the party has a right to treat the arrest as illegal and may resist it. That proof was not made either directly or indirectly.

Whether or not an arrest of a party by an officer is legal or illegal, is a question of law, and the court cannot properly leave the question of the legality or the illegality of the arrest for the jury to decide, because the burden would be cast upon the jury not only of finding out the facts but

find what the law is on the subject. Miers v. State, 34 Texas Crim. Rep., 188; Cortez v. State, 44 Texas Crim. Rep., 169; 69 S. W. Rep., 536; Warthan v. State, 55 S. W. Rep., 55.

Whether a pistol is a deadly weapon or not, depends upon the manner of its use, and it is a question of fact, for the jury to decide from the evidence and draw their conclusion as to the deadly character of the weapon. See L. R. A., vol. 12, p. 293–294, for the rule, and collation of authorities against the admissibility of the conclusions and opinions of a witness.

*F. J. McCord,* Assistant Attorney-General, and *Richard Mays,* for State.—All of this testimony, including that complained of, was admitted for the purpose of enabling the jury to determine for what Maddux arrested appellant. Earles v. State, 47 Texas Crim. Rep., 559; 85 S. W. Rep., 4; Jacobs v. State, 28 Texas Crim. App., 79.

On question of arrest without warrant: Odle v. State, 13 Texas Crim. App., 612; Black v. State, 38 Texas Crim. Rep., 58; Buckler's Digest, 338–9, 340. Code Criminal Procedure, art. 715, sec. 801, paragraph 2.

Under the special charter and ordinance of the City of Corsicana a policeman of said city can lawfully arrest without warrant, one who is guilty of a disturbance of the peace, though not committed in his presence. Mundine v. State, 37 Texas Crim. Rep., 5.

BROOKS, Judge.—Appellant was convicted of manslaughter, and his punishment assessed at four years confinement in the penitentiary.

This case has been appealed to this court twice before this appeal. The former opinions in the case will be found in 47 Texas Crim. Rep., 559; 12 Texas Ct. Rep., 267, and 16 Texas Ct. Rep., 223 respectively. For a statement of the evidence see the former opinions.

Bill of exceptions, No. 1, shows that the State was permitted to prove, on cross-examination of Roy Canady, that after deceased, Maddux, arrested appellant, they went off peacefully without any trouble. Appellant objected to this testimony on the ground that it was immaterial, and a conclusion of the witness. The appearance of appellant as to whether he was angry or not is legitimate matter for inquiry and it is not an opinion of the witness to testify to same. Bill of exceptions, No. 2, complains, in substance, of the same character of testimony.

Bill of exceptions, No. 3, complains of the following: On cross-examination of appellant he was asked the following questions: "Q. You say that you were on your way from Wortham to Dallas? A. Yes, sir. Q. What did you stop at Corsicana for? A. Just simply because I had decided I would stop off there until Monday morning. Appellant's counsel: 'I urge this objection to that: I don't believe it is material to state why he stopped off in Corsicana.' The court: 'Witness has answered the question.' Appellant's counsel: 'Well, I object to any further examination on that question.' Q. Well, what

did you stop there for? Mr. Williams: 'I make the objection.' The court: 'I overrule the objection.' Appellant's counsel. 'I except to the ruling of the court.' Witness: Well, I told you while ago I stopped because I decided I wanted to stop off there and decided to stay until Monday morning; I struck up with some parties I had been very good friends with and had not seen them for some time, and stopped over there until Monday." We can see no possible objection to this testimony under any phase of the law of this State. If appellant stopped off for an innocent purpose, which he testifies he did, it could not possibly hurt him; if he stopped off for an illegal purpose, it might have been legitimate testimony in the trial of this case; not necessarily so however, but clearly in the light of this bill there could have been no injury to appellant.

Bill of exceptions, No. 4, shows that while appellant was on the stand, counsel for the State, on cross-examination, asked him the following questions: "Q. How many times had you been to the oil mill to see Batson? A. Why, I was down there two or three times that day. Q. You had your pistol down there with you? A. Down there at the mill." Appellant's counsel objected on the ground that it is immaterial whether defendant had a pistol and was carrying it at the oil mill, which objection the court overruled. This bill is wholly defective in that no answer of the witness is shown by the bill. We will not look at the statement of facts to see what his answer was; the bill must be complete.

Bill of exceptions, No. 5, shows the following: Appellant's witness, T. W. Hoskins, was placed upon the stand, and .the following questions propounded to him: "Q. Do you remember having a conversation with Mr. Grantham, right after the jury had received the instruction of the court and they had retired; a short while after that?" The State objected on the ground that it was immaterial. Appellant's counsel: "They asked him, Grantham, that question and drew it out, and wanted to know how it got to me." The court: "The question is now, you propose to prove by this witness what Grantham told him?" Mr. Williams: "Yes, and how we got on to Grantham's testimony." The objection was sustained. The bill is approved with this statement: "There was and had been no attempt by the State to show that Grantham did not have a talk with Hoskins, to which he had testified." There certainly could have been no error in the ruling of the court.

Bill of exceptions, No. 6, shows that the State's witness, Bradley, was asked if the pistol used by Earles was a deadly weapon, and witness answered that it was a very deadly and dangerous weapon. The court approved the bill with the statement that the witness had testified that he was a deputy sheriff and had been for a long number of years; that the pistol in question was a 38-caliber, long barrel, and then answered as shown in the foregoing bill. There was no error in the admission of this testimony.

Bill of exceptions, No. 7, complains of the following testimony of the

witness, Ricker: "I observed the arrest of Earles by deceased; he went straight on with him; never made any halt; the morning of the arrest deceased was on duty with me. The chief of police saw deceased and myself together that morning, and made a statement to us in reference to making an arrest of appellant; he instructed us, if we found Earles that day, to arrest him for disturbing the peace. I don't remember that he said anything about him carrying a pistol. I had no conversation with deceased before the chief of police instructed us to arrest Earles. I had a conversation with deceased after that, about 9 o'clock; we had left the city hall, going up town. After our conversation with the chief of police deceased did not say what he wanted Earles for; he was just talking about the description of Earles; neither one knew him, and he remarked then that he had been told that appellant had a pistol; that John Nutt had told him that morning; he did not say whether he wanted to arrest him for carrying a pistol or what; he did say that he had been told that he had a pistol." John Stewart, a witness for the State, testified that he was city marshal of Corsicana: "On the morning of the day that Maddux was killed, in response to a request, I went out to Dean's house. When I returned to the city hall I gave instructions to Ricker and Maddux, policemen, on day duty at that time, to arrest appellant if they met up with him. I told them they could get him for two offenses, one for disturbing the peace, and one for carrying a pistol. I told them he had a pistol on. There was no warrant for the arrest of appellant nor any complaint filed in the city court." This testimony was clearly admissible. It does not come within the rule of third parties talking out of the presence of appellant invoked by appellant for its exclusion in this case. It is proper and incumbent upon the State to show a basis for the legal arrest, and if the deceased had been informed, as this witness testifies, that appellant had a pistol, or had been carrying a pistol, he had a right to arrest without a warrant.

Appellant objects to the testimony of W. M. Ellis and J. W. Gillispie on the ground that same was not in rebuttal. The bill does not state what they testified to, and hence is defective. The sheer fact it was not in rebuttal would not make it inadmissible if it was introduced before the trial terminated. The court says that the testimony was in contradiction of testimony offered by appellant. We find no error in the ruling of the court.

Bill of exceptions, No. 9, shows the State's witness Bradley testified as follows: "I met deceased at Kiber & Cobbs' corner, and had a conversation with deceased about defendant. Q. 'Did he (deceased) tell you in that conversation on said corner that he wanted to arrest Earles?' A. 'Yes, said he was hunting him.' Q. 'Did you tell deceased that you wanted Earles also?' A. 'Yes.' Q. 'Did you tell deceased in that conversation what you wanted Earles for?' A. 'I did not.'" Appellant objects to this testimony on the ground that it was a conversation between two officers in the absence of appellant, and was hearsay, and

not a part of the res gestæ. We do not think there was any error in the ruling of the court. At least it was harmless.

Bill of exceptions, No. 10, shows that the State's witness C. W. Taylor testified that he saw Mr. Sutherland, the undertaker, insert a probe into the wound in the body of deceased after he was dead; the wound was on the left side of the body. He could not swear whether he followed the course of the bullet or not: "I was not watching him when he found the direction he afterwards told me about. The undertaker entered a metal probe a little thicker than a pencil, about eight or ten inches long, sharp at one end. He worked in the wound with that probe for three or four minutes. I was watching him. He was trying to find the direction of the bullet. After he had worked two or three minutes, he did not find the direction the bullet had taken. I stepped around on the other side of the body, and presently he called to me, and I went around to the other side of the table, and he was then pushing the probe clear into the body perfectly easy." The defendant then offered to prove by said witness what angle said probe was working, whether straight in or to the side. The State's contention being that Maddux was shot from the back, and the defendant the contrary. The State objected to this witness stating at what angle the probe was working, unless he could state that it was following the wound. The witness stated he could not state this, and that he had told appellant's counsel he thought his testimony would not be admitted, but that he ought to have the undertaker. It further appeared the undertaker lived in Corsicana and no process had been issued for him. Objection of the State was sustained. This bill was prepared by the court in lieu of one prepared by appellant. We do not think there was any error in the refusal of the court to permit the witness to testify to something he evidently knew nothing about.

Bill of exceptions, No. 11, shows that appellant offered various witnesses who knew the general reputation of deceased in Corsicana, and that his general reputation in said city was that of a man of violent temper and overbearing disposition, and was a determined man. Defendant offered this testimony to show the jury that appellant was in the custody of a man who not only had the power and means, but was the kind of a man that likely would have killed or crushed defendant if such force became necessary to compel defendant to submit to the arrest. The State objected to this testimony on the ground that appellant neither knew deceased nor had ever heard of him, and that deceased did not know appellant. It was not contended that deceased made any threat of any character, or statements threatening violence of any kind to defendant. The court asked counsel for appellant if he would undertake to show that appellant knew of such reputation of deceased. Counsel for appellant stated that he could not show that appellant knew it. This bill is also prepared by the court in lieu of appellant's bill. We do not think there was any error in the ruling of the court since appel-

lant could only prove deceased was a violent and dangerous character.

Bill of exceptions, No. 12, shows that defendant, after the State had closed its evidence, filed a motion in writing asking the court to strike out and exclude all the testimony in support of the theory of the State that Maddux, the deceased, arrested the appellant for unlawfully carrying a pistol, because, under the first and second grounds, there is no evidence that deceased arrested appellant for carrying a pistol. The court overruled said grounds of the motion and approved the bill, stating that the motion was not before him at the time, but that the motion itself would be in the record and would show the grounds. The above grounds appear to be in the motion. We do not think the court erred in failing to exclude the testimony. The fact that there is no testimony that he informed appellant at the time of the arrest that he did so for carrying a pistol, would not preclude the arrest being legal, if the circumstances warranted the jury in believing that he did so inform him. The verdict in this case clearly shows the jury did not believe the arrest was legal since they found appellant guilty of manslaughter.

Bill of exceptions, No. 13, shows the State offered in evidence article 363 of the Revised Ordinances of the City of Corsicana, and being the same as article 407 of the Revised Statutes of 1895; also article 290 of said Revised Ordinances, and article 11 of said ordinances, and also in connection with said ordinances, the State offered in evidence section 48 of the Special Charter of the City of Corsicana, adopted and incorporated as a part of the ordinances of said city in 1905. Also sections 91 and 276 of said charter. The same was offered for the purpose of showing that a policeman of Corsicana had authority to make an arrest for disturbance of the peace without warrant whether the offense was committed in his presence or view or not. We do not deem it necessary to copy said ordinances, but suffice it to say that same were admissible to show, which they did, that a policeman had a right to arrest appellant for violations against the peace, and for carrying a pistol. But be this as it may, in view of the verdict in this case, it could not have injured appellant since the jury found in favor of appellant on the issue of arrest when they decided that appellant was guilty of manslaughter.

Appellant filed a motion for continuance, but we do not find any bill of exceptions reserved to the overruling thereof, hence same cannot be considered.

The tenth ground of the motion for a new trial complains that the court erred in paragraphs 24, 25, 26 and 27 in this: The court used the following language: "If you find that the arrest of defendant by Maddux was illegal," etc. "The vice in the charge in said paragraphs is in the court submitting the question as to the legality of the arrest to the jury to be determined by the jury, as a question of fact. The court should have excluded all testimony as to the arrest for carrying a pistol, and instructed the jury that the arrest was illegal, and leave nothing in this respect for the jury to pass on. Whether the arrest was legal or illegal is a question of law, and a matter for the court to decide and so

instruct the jury." The charge of the court was an apt presentation of all the law applicable to the facts of this case. It was controverted by appellant as to whether the arrest was legal. The evidence is conflicting on this question. The court told the jury that deceased would have the right to arrest appellant for carrying a pistol without warrant, but he would not have a right to arrest him for seduction or disturbing the peace without a warrant, and the court told the jury, after finding what would be a legal arrest, that if he was legally arrested appellant would not have the right to resist. In other words, the evidence being conflicting as to whether the arrest was legal or not, it was the duty of the court to define a legal arrest, which he did, and then submit the issue to the jury to pass upon. Instead of the charge being erroneous, it was a proper way of presenting the question to the jury. If the evidence had been undisputed either way, then it would have been proper for the court to have said the evidence showed the arrest was legal or illegal, as the case might have been, but in this record the evidence is conflicting.

We have carefully read and reread the charge of the court, in the light of the former opinions in this case, and must say that it covers every possible phase of the evidence and every possible right of appellant thereunder. The jury have seen fit to find appellant guilty of manslaughter, and this court does not feel called upon to disturb their finding.

In the view of the writer, the previous opinions of this court were erroneous in holding that appellant would have a right to resist an illegal arrest when the facts showed that he did not know whether the arrest was legal or not. I understand the law of this State to be that if an officer arrests a party illegally, and that party does not know whether the arrest is legal or not, but draws a pistol and kills the officer, that the question of legality or illegality of the arrest would not be in the case at all. In other words, appellant's guilt or innocence depends upon his knowledge or intent. To say that a defendant can kill a man, and because the subsequent developments showed that the man killed had illegally arrested him, which fact was not known to appellant at the time of the killing, is a proposition that I cannot assent to. Appellant's guilt is dependent upon his own animus and intent. How can one insist that a killing is nothing but manslaughter on a theory not known to the party at the time of the killing? Of course, if one is arrested and believes the arrest is illegal, and so believing acts on that belief, then the issue of legality or illegality of the arrest is a pertinent issue in the trial, but where one submits to an arrest, not knowing whether the arrest is legal or not, and subsequently jerks loose from the officer and kills him because of the arrest, it would not, in my opinion, make it any the less murder because the facts should subsequently show that the arrest was illegal. To illustrate: Suppose A kills B, and on the trial of A he should get on the stand and swear that he killed B because he had seduced his daughter, but in that connection he stated that the fact that he had seduced his daughter was made known to him subsequent to the killing. The killing having taken place on the first

meeting after the seduction, would not render the fact of the seduction admissible to mitigate the punishment of A since A's guilt is dependent upon the knowledge and the intent that he had at the time of the killing. However, the court has twice differed with me on this question, and the above views are simply presented by reason of the fact that I did not state them before.

Finding no error in the record, and believing from the previous opinions that the verdict is warranted by the evidence, the judgment is in all things affirmed.

*Affirmed.*

Henderson, Judge, absent.

[Motion for rehearing overruled December 18, 1907, without written opinion.—Reporter.]