19 P.(2d) 744

## STATE v. KUYKENDALL.

### No. 3765.

Supreme Court of New Mexico.

Feb. 16, 1933.

Rehearing Denied March 20; 1933.

C. R. McIntosh and David Chavez, Jr., both of Santa Fe, and C. H. Allen, for appellant.

E. K. Neumann, Atty. Gen., and Quincy D. Adams, Asst. Atty. Gen., for the State.

WATSON, Chief Justice.

Paul M. Kuykendall shot and killed Pat Murray, was charged, by information, with murder in the first degree, was convicted of murder in the second degree, and has appealed.

Appellant not having given us a statement of facts, we shall, in the main, follow that of the Attorney General. Appellant was a storekeeper at Rutheron. His wife was postmaster. Their home was in the same building with the store and post office. Deceased was a deputy sheriff, though appellant is not shown to have had previous knowledge of that fact. A year or more before the homicide there had been opposition to appellant's continuance as a member of the school board, and deceased and others had petitioned for his removal. There is evidence that deceased had threatened appellant's life and that deceased was a violent, quarrelsome, and dangerous man.

A school entertainment was to be given in Rutheron on the evening of December 19, 1930. A few days before this the deceased is said to have stated that appellant was carrying a gun, though he had tried and failed to get permission to carry one, and that he (deceased) was "going to have to take a gun off of him" (appellant) at the entertainment.

Both appellant and deceased were at the entertainment; the former seated in the rear, the latter near the front. There was no incident until the entertainment was about over, when deceased rose, walked to the rear, confronted appellant, charged him with having a gun, and announced an intention to search him. Appellant demanded to know by what authority deceased was proceeding. The latter then left the building and immediately returned, gun in hand, and exhibited a paper. The latter is not in evidence. Counsel presume it to have been a commission as deputy sheriff; there being no claim that the deceased acted under a warrant.

Search was made and no gun was found on appellant. In the process of search, deceased used some physical violence. Thereupon appellant's wife produced a pistol, pointed it at deceased, and announced that she would shoot if her husband were further interfered with. Deceased called upon a bystander to take the pistol away from Mrs. Kuykendall, and announced that both she and appellant were under arrest. Appellant himself thereupon took the pistol from his wife and hurriedly left the building and went home.

Mrs. Kuykendall, while holding the pistol, stated that as a postmaster she had a right to carry a gun. Of all the witnesses to this preliminary of the ensuing tragedy, one only, the wife of the deceased, inferred in any way

that appellant was armed at the entertainment. This witness claimed to have seen appellant pass the pistol to his wife.

After appellant's leaving, the deceased, pursuing his announcement of arrest, took Mrs. Kuykendall to a car and, with one Cox, the bystander above mentioned, started away. On the suggestion of the latter they stopped at appellant's home to enable her to get wraps or clothing she might need.

Mrs. Kuykendall and deceased proceeded to the door; Cox remaining in the car. Mrs. Kuykendall entered, but Murray's entrance was barred by one Christian. Cox says that Christian asked the deceased to show his authority; that deceased took a paper from his overcoat pocket and stretched it across his stomach.; that Christian turned a flash-light on the paper; that appellant came from the back of the store, which was dark, Cox seeing him by the light held by Christian, and fired two shots; that deceased fell, and appellant fired two more shots; that deceased, while exhibiting the paper, had no gun in his hands; that he rolled off the porch, got to the car, got his gun, and emptied it at the door.

Christian says that the deceased announced at the door, "I have a woman in there under arrest, and I am going to get that red-headed son-of-a-bitch." That, as he crowded in at the door with the paper in his left hand, he "went to his pocket" with his right. The witness heard one shot, then several. His opinion was that the first shot was from the small caliber gun (deceased's being a .22),

and that those succeeding were from the larger gun.

The foregoing is by no means a review of the evidence, but it will suffice for present purposes.

The first contention is that the court erred in submitting any grade of homicide higher than voluntary manslaughter. The theory is that the homicide occurred while appellant was under the provocation of an attempted illegal arrest; that such provocation is sufficient in law to engender "heat of passion"; and that there is no evidence of malice.

Assuming for the moment that deceased was attempting an illegal arrest, we think appellant's contention well founded.

We have given express approval to the principle that "where the arrest is illegal, the offense is reduced to manslaughter, * * * unless the proof showed express malice toward the deceased." Territory v. Lynch, 18 N. M. 15, 133 P. 405, 409.

The state urges that the court could not properly have excluded murder from the jury's consideration, because, admitting that there was an attempt to make an illegal arrest, and admitting that such attempt constitutes sufficient provocation in law for heat of passion, there was still evidence to require the jury's decision whether heat of passion or malice actually prompted the homicide.

Such evidence, if in the record, might usefully have been pointed out. The Attorney General says, however, "Without discussing such evidence in detail, it is sufficient to call

the court's attention to the introduction in evidence of a petition signed by the deceased asking for appellant's removal from the school board."

Whatever malice this may show on the part of the deceased, we fail to perceive in it any evidence of malice entertained by appellant.

██ Malice is defined as a "deliberate intention, unlawfully to take away the life of a fellow creature." Comp. St. 1929 § 35-302. Express malice is that which is "manifested by external circumstances capable of proof." Id. Malice may be implied "when no considerable provocation appears, or when all circumstances of the killing show a wicked and malignant heart." Id. § 35-303.

It is quite possible in a particular case that the slayer, though the victim of an illegal arrest or attempted arrest, may really have been impelled by malice. It was said in Territory v. Lynch, supra: "We particularly approve his qualification of the rule, last laid down, that if in fact the outrage of an attempted illegal arrest has not excited the passions, a killing in cold blood will be murder."

But in this case there is no express malice. It can only be implied or inferred from acts and words of the deceased which might be deemed sufficient to engender some degree of ill will in appellant. No "external circumstances" have been adduced showing malice. We assume that the jury found, and justifiably found, that appellant fired unnecessarily or prematurely. Yet it was after having suffered personal indignity, after having foregone an opportunity to slay his tormenter, and after having retreated to his home.

The rule as above quoted requires the state to show express malice. But if implied malice could suffice in any case, there is none here. We have not only a "considerable provocation," but one which the law pronounces sufficient. Nor do "all circumstances of the killing show a wicked and malignant heart."

So far we have assumed that the deceased, when slain, was attempting an illegal arrest. The state challenges the assumption. It points to the testimony of the witness Cox as showing that when the deceased appeared at appellant's home, he did not know that appellant was there; that the purpose was not to arrest appellant, but to allow Mrs. Kuykendall to get her wraps.

█ If the final incident at appellant's home were to be considered as standing alone, the state would be right, no doubt. But it is immediately and inseparably connected with the preceding incident in the schoolhouse, where, after an abortive search of appellant's person for a concealed weapon, the deceased illegally declared him under arrest. Taking the state's evidence for it, and disregarding that of the defense, appellant must have supposed, if deceased did not in fact declare, that the purpose of the invasion was to arrest or recapture him.

Under these conditions, does it avail the state to show that such was not in fact, at the moment, the purpose of the deceased?

In State v. Middleton, 26 N. M. 353, 192 P. 483, the purpose existed, but, being undis-

closed and unknown to the accused, it was held immaterial. The reasoning of that case and the minority view of Judge Brooks, there commended (Earles v. State, 52 Tex. Cr. R. 140, 106 S. W. 138), might justify a conclusion that in law, as well as in fact, an ostensible purpose to arrest is as effective to provoke heat of passion as an actual purpose.

We shall not now decide this point of law. We rest this decision upon the peculiar facts of this record. We do not think this is a case of mistake as to the purpose of the deceased. He had declared appellant under arrest. He had not released him. The evidence for the state does not show any abandonment of purpose. It merely shows that the deceased did not know he was so near its accomplishment. The presumption must be that on entering the house and finding appellant there he would have taken him into custody. The legal provocation given at the schoolhouse was, to all appearance, almost immediately continued at appellant's home. We do not consider it removed by a mere showing that the attention of the deceased had been temporarily diverted, and that, at the very moment, being ignorant of appellant's proximity, he did not entertain the purpose he was apparently pursuing.

■ Finally, the state contends that the arrest or attempted arrest at the schoolhouse was not illegal. The theory is, that when appellant took the pistol from his wife, he committed a misdemeanor in the presence of the deceased, warranting arrest. We cannot accept this. There is no evidence, and can be no proper inference, that appellant took the pistol for any other purpose than to prevent his wife from firing it. He immediately left and went home.

■ We conclude, therefore, that appellant's motion to confine the jury's deliberation to the crime of manslaughter should have been granted.

The remaining claims of error relate almost entirely to the instructions given and those refused. We perceive no good purpose in considering them, since, when again tried, this case will necessarily be presented on a different theory and take a different course.

We are constrained to reverse the judgment, and to remand the cause for new trial.

It is so ordered.

SADLER, HUDSPETH, BICKLEY, and ZINN, JJ., concur.