459 P.2d 148

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**John Lavurn McFERRAN, Defendant-Appellant.**

**No. 301.**

Court of Appeals of New Mexico.

Aug. 29, 1969.

Certiorari Denied Nov. 10, 1969.

William C. Marchiondo, Robert C. Hanna, Albuquerque, for defendant-appellant.

James A. Maloney, Atty. Gen., Santa Fe, Ray Shollenbarger, Asst. Atty. Gen., for plaintiff-appellee.

## OPINION

WOOD, Judge.

Defendant was convicted of second degree murder in the killing of Rafael Griego. Appealing, he raises 14 issues. These issues concern: (1) loss of evidence; (2) admonitions to the prosecutor; (3) the court's refusal to call two men as witnesses of the court; (4) cross-examination of witnesses as to their misconduct; (5) the basis for questioning as to witness misconduct and claiming the privilege against self-incrimination during such questioning; (6) improper reference to defendant during cross-examination of a witness; (7) refusing defendant's requested instruction concerning defendant's association with two witnesses; (8) questioning defendant concerning prior convictions; (9) failure of the court to instruct the jury to disregard a question to which an objection had been sustained; (10) rebuttal evidence as to deceased's peaceful disposition; (11) conversation between a juror and a witness; (12) evidence of and instruction on malice; (13) the instruction on intent to kill; and, (14) fundamental error.

Defendant, Mapys and Koch were afoot, at night, in Tijeras Canyon east of Albuquerque. Mapys took a bale of hay from the property of Griego. The men spread the hay on the ground across an arroyo from the Griego property and went to sleep. Griego's son discovered the men and called his father. Griego told the men to go to his house. Griego followed the men. Without their knowledge, Griego picked up a rock and put it in his pocket. (See issues 1 and 12). While at the house, a fight occurred. During the fight, defendant shot Griego. The wounds were fatal.

■ Issue 1. *Loss of evidence.*

In the fight, Griego struck defendant with the rock. The rock was taken into custody by investigating officers. Subsequently, the rock was lost. Defendant moved to dismiss because of the State's failure to produce the rock. In denying

the motion, the court stated: " * * * I feel that with the testimony being available to the defendant as to the existence of the rock, the description of the size of the rock by the deceased's own son, plus the fact that the district attorney is willing to stipulate that the deceased struck the defendant with the rock prior to the shooting— * * * that there is no denial of due process."

The State admitted, to the jury, " * * that the defendant, John McFerran, was struck * * * with a rock by Rafael Griego. * * *" This admission did not state that defendant was hit with the rock before the shooting, however, no objection was made to this omission. We do not consider the omission crucial. There is evidence that Griego hit defendant with the rock before defendant shot him. The conflict in the evidence is whether defendant had the gun out and pointed at Griego before Griego hit defendant.

Defendant claims the loss of the rock deprived him of due process. He relies on Trimble v. State, 75 N.M. 183, 402 P.2d 162 (1965). In *Trimble* the police lost a letter and some tape recordings which had been taken from the defendant. The State's evidence cast doubt on the existence of the letter. It introduced evidence that the tapes contained nothing concerning the case. Production of the letter and tapes would have corroborated, to some extent, defendant's account of the events leading to the shooting. Loss of these items prejudiced the defense and deprived the defendant of due process.

*Trimble* is not applicable. It is not disputed that Griego struck defendant with the rock. There was testimony concerning its size and shape. The dispute is over whether defendant pulled the gun before or after being hit with the rock. The presence of the rock would have contributed nothing to resolving this dispute. With information available as to the size and shape of the rock, the loss of the rock did not deprive defendant of evidence tending to show his innocence. The loss of the rock did not deprive defendant of due process. Compare State v. Morris, 69 N.M. 244, 365 P.2d 668 (1961).

█ Issue 2. *Admonitions to the prosecutor.*

Defendant asserts the prosecutor made improper and prejudicial comments in the presence of the jury and that the court repeatedly admonished the prosecutor because of these comments. He contends these remarks of the prosecutor, of sufficient gravity to result in admonition by the court, deprived him of due process. He relies on five instances. They are:

(a) The prosecutor moved to withdraw certain items from evidence in order to conduct an experiment. Out of the presence of the jury, the prosecutor was cautioned against making that type of motion in the presence of the jury. In the presence of the jury, the prosecutor was advised that the experiment would not be permitted. The jury was told not to consider the prosecutor's remark; further, that the prosecutor's remarks were not evidence.

(b) Mapys was on the witness stand; his attorney, Mr. Tapia, was nearby. Mr. Tapia requested permission to approach the bench. The prosecutor remarked: "Your Honor, anything Mr. Tapia says I want it said loud enough so the Court and everyone can hear." The court immediately ordered the prosecutor's remarks stricken, stating: " * * * This is the last time I am going to caution counsel in this case about making those kinds of statements in this Court."

(c) During cross-examination of the defense witness, Mapys, an objection was sustained to one of the prosecutor's questions (see issue 6). The question went beyond the prosecutor's stated purpose of testing the credibility of the witness. The court told the prosecutor to proceed with testing the witness's credibility.

(d) At another point in the cross-examination of Mapys, a defense objection was sustained. However, contrary to defendant's assertion, there was no admonition to the prosecutor.

(e) The testimony of a rebuttal witness for the State was stricken. The jury was instructed to disregard the testimony. Again, contrary to defendant's assertion, the prosecutor was not admonished.

At the most, there are three instances of prosecutor misconduct. In each instance the prosecutor was admonished. The instructions told the jury that remarks of counsel were not to be considered as evidence (items (a) and (b)). The jury was instructed not to consider what would have been the answers to questions which the court ruled could not be answered (items (c) and (d)). It was instructed not to consider the court's reasons for its rulings on evidence (item (e)). Further, it was instructed that it must follow the law as stated by the court.

If the three instances of prosecutor misconduct tended to prejudice the defendant, that tendency was offset by the admonitions and instructions. We hold the prosecutor's misconduct did not deprive defendant of a fair trial. See State v. Anaya, 79 N.M. 43, 439 P.2d 561 (Ct.App.1968); compare State v. Cummings, 57 N.M. 36, 253 P.2d 321 (1953). In so holding, we do not condone the improper conduct of the prosecutor.

Issue 3. *The court's refusal to call Mapys and Koch as witnesses of the court.*

■ Mapys and Koch were eye witnesses to the killing. Defendant asked the court to call them as witnesses of the court. Because the court refused to do so, defendant contends he was denied due process.

City of Portales v. Bell, 72 N.M. 80, 380 P.2d 826 (1963) refers to an instance where it may be proper for the court to call a witness. It states:

"* * * One of the rare cases where the action of the trial judge in calling a witness in a criminal case has been approved was when the prosecuting attorney informed the court that the witness was available, but the prosecutor declined to call him because he could not vouch for his truthfulness and veracity. * * *"

That is not the situation here. Defendant did not question that Mapys and Koch would "* * * tell the truth about the events. * * *" Absent such a rare instance, *City of Portales* makes it clear that, generally, the trial court should not call a witness in a criminal case, particularly where the case is being tried before a jury. It states:

"* * * in a criminal proceeding, such a practice should rarely be followed, as the court must be extremely careful to preserve an attitude of impartiality. * *

"* * * We would observe, however, that the discretionary power of the court to call a witness is one that should be exercised cautiously and is fraught with great danger which might improperly influence a jury if it were present. * *"

In following the admonitions of *City of Portales,* the trial court did not deprive defendant of due process.

■ Issue 4. *Cross-examination of Mapys and Koch as to misconduct.*

Defendant's request that the court call Mapys and Koch as witnesses of the court included a request that both the State and the defense be allowed to cross-examine, but that no cross-examination be allowed concerning prior convictions or misconduct. Defendant contends the State's cross-examination of Mapys and Koch, as to their misconduct, was so prejudicial that it should not have been permitted.

Section 20-2-4, N.M.S.A.1953 provides that the bad moral character of a witness may be shown for the purpose of attacking his credibility. Martinez v. Avila, 76 N.M. 372, 415 P.2d 59 (1966) and cases therein cited. Where the witness is the defendant: "* * * The trial court * * * should limit the cross-examination where its legitimate probative value on the credibility of the accused as a witness seems obviously outweighed by its illegitimate tendency, effect and often purpose, to prejudice him as a defendant." State v. Holden, 45 N.M. 147, 113 P.2d 171 (1941). See State v. Williams, 76 N.M. 578, 417 P.2d 62 (1966); State v. Waller, 80 N.M. 380, 456 P.2d 213

(Ct.App.1969) ; State v. Coca, 80 N.M. 95, 451 P.2d 999 (Ct.App.1969).

This issue, however, is not concerned with the defendant as a witness. Here we are concerned with the asserted prejudicial effect upon a defendant by a cross-examination of non-defendant witnesses as to their misconduct. We assume, but do not decide, that in this situation the same rule applies—that the legitimate probative value of such questioning on the credibility of the *witness* must be weighed against a tendency of such questioning to prejudice the *defendant*.

Applying this assumed rule, the trial court did not err in permitting the cross-examination as to misconduct. Except for one instance, discussed in issue 6, none of the questions involved the defendant. Credibility was crucial in this case; the defense version of events differed materially from the State's version. In this situation, the trial court did not err in ruling that the right afforded by § 20-2-4, supra, should not be limited. Our view is expressed in State v. Holden, supra. It states:

"* * * [T]he primary responsibility is that of the trial judge whose discretion in such matters is not to be lightly disturbed, even though we may feel that as trial judges our own discretions might have been moved oppositely. This is not the test. Rather it is whether the trial judge's action seems obviously erroneous, arbitrary and unwarranted. We are unable to say as much of his exercise of discretion here reviewed."

Issue 5. *The basis for questioning as to witness misconduct and claiming the privilege against self-incrimination during such questioning.*

Defendant claims the prosecutor deprived defendant of due process in questioning Mapys and Koch as to their misconduct. This issue has two parts.

The first part is concerned with the basis for the questions as to misconduct. The prosecutor had a basis for asking the questions; the questions were derived from information contained in the written statement of Mapys. Compare State v. Garcia, 80 N.M. 247, 453 P.2d 767 (Ct.App. 1969). Defendant contends he was denied due process by the questioning because Mapys gave the statement after being interrogated by law enforcement officers. Defendant claims the statement was "illegally obtained." He makes no showing, in this appeal, in support of this claim. Further, we find nothing in the record indicating this issue—that Mapys' statement was obtained improperly—was ever presented to the trial court. See State v. Baca 80 N.M. 488, 458 P.2d 92 (Ct.App.1969).

The second part is concerned with the witnesses' responses to questions as to their misconduct. They refused to answer such questions, instead, they invoked their privilege against self-incrimination. The issue, here, does not involve a loss of the right of cross-examination. See State v. Rogers, 80 N.M. 230, 453 P.2d 593 (Ct.App. 1969). Nor does it involve the questioning of a witness as to why he invoked his constitutional privilege. See State v. Hovey, 80 N.M. 373, 456 P.2d 206 (Ct.App.1969). Defendant contends the prosecutor knew Mapys and Koch would invoke their constitutional privilege when questioned about misconduct. Defendant asserts questioning in this circumstance denied him due process.

■ We assume the prosecutor knew that Mapys and Koch would invoke their constitutional privilege when questioned as to their misconduct. We also assume the repeated refusal to answer on constitutional grounds as effectively destroyed their credibility as admissions would have done. But what were the other circumstances involved in such questioning? Defendant called Mapys and Koch as witnesses. Their testimony was favorable to the defense. As a general rule, a party calling a witness vouches for the credibility of the witness. Romero v. Turnell, 68 N.M. 362, 362 P.2d 515 (1961). Here, defendant had declined to question the truthfulness of Mapys and Koch. See issue 3.

On one hand we have the State proceeding under § 20-2-4, supra, knowing its questions would not be answered; knowing the privilege against self-incrimination would be invoked. On the other hand we have the defense obtaining the benefit of the witnesses' testimony yet attempting to prohibit any attack on their credibility on the basis of their misconduct.

In such circumstances, our view is the same as expressed in issue 4. The trial court was required to consider whether the legitimate effect of such questioning—the attack on credibility—was outweighed by prejudice to the defendant. So viewed, the prosecutor's questioning was not improper. Only one of the questions as to misconduct pertained to the defendant. See issue 6. If that one question had a tendency to prejudice the defendant, its effect was cured. The court informed the jury that Mapys and Koch had refused to answer questions upon the advice of their own attorneys; that this advice did not come from defendant's counsel. The jury was instructed not to draw any inference as to the guilt or innocence of the defendant from the fact that witnesses had refused to testify but had claimed their constitutional privilege. Compare State v. Pace, 80 N.M. 364, 456 P.2d 197 (1969).

Issue 6. *Improper reference to defendant during cross-examination of Mapys.*

The record shows:

"Q Did the defendants, McFerran and Mr. Koch, ride to [sic] you to Albuquerque in a 1965 white Oldsmobile with Texas license plates?

"MR. MARCHIONDO: To which we object, if the Court please.

"THE COURT: Sustained.

"MR. MARCHIONDO: We ask that the jury be instructed to disregard the question.

"THE COURT: The jury will be instructed to disregard the question just asked and not to consider it in arriving at any verdict in this case."

Defendant asserts " * * * that because of the conduct of these two witnesses and their taking the Fifth Amendment * * * " the jury was in the position of inferring that defendant was " * * * part and parcel * * * " of the conduct of Mapys and Koch. Defendant claims the above quoted question was a deliberate attempt on the part of the State to have the jury draw such an inference.

The wording of the question indicates the prosecutor was attempting to tie defendant to Mapys' misconduct. We assume the question was improper. Since it was not answered, the issue is whether the asking of the question was prejudicial to defendant.

There are instances where the asking of a question is so prejudicial that an admonition to the jury to disregard the question is insufficient to cure the prejudicial effect. State v. Rowell, 77 N.M. 124, 419 P.2d 966 (1966). Generally, however, when the question is not answered and the jury is admonished to disregard the question, any prejudicial effect is cured. State v. Anaya, supra; see State v. Pace, supra; State v. Ferguson, 77 N.M. 441, 423 P.2d 872 (1967).

Here, we cannot say that the question, in itself, was prejudicial. Defendant testified that he hitch-hiked a ride to Albuquerque with Mapys and Koch in the white Oldsmobile. The question to Mapys was directed to the same ride.

But if prejudicial, the question was such that its effect could be disregarded by the jury. The trial court not only gave the admonition appearing in the quotation, it instructed the jury not to draw any inference of defendant's guilt from his association with Mapys and Koch. If the question was prejudicial, the prejudicial effect was cured by the admonition and instruction. State v. Ferguson, supra; State v. Anaya, supra.

Issue 7. *Refusing defendant's requested instruction concerning defendant's association with Mapys and Koch.*

The trial court gave the following instruction:

"You are instructed that the defendant's association with the witnesses Koch and Mapys and the fact that charges against the witnesses Koch and Mapys have been dismissed is not evidence of the guilt of the defendant McFerran and you are not to draw from such facts any inference to the defendant's guilt of the crime charged."

Every element of defendant's requested instruction was covered in the instruction given by the court. It was not error to refuse the requested instruction. Apodaca v. Miller, 79 N.M. 160, 441 P.2d 200 (1968).

Issue 8. *Questioning defendant concerning prior convictions.*

On cross-examination, defendant admitted that he had been convicted of "robbery by assault" and in the same proceeding had been convicted of "assault to murder." These convictions occurred in 1955. Defendant's trial was in 1967. Defendant contends the questioning as to prior convictions was prejudicial because the 1955 convictions were " * * * too remote to have any probative value. * * *".

Section 20–2–3, N.M.S.A.1953 permits questions as to prior convictions. State v. Williams, supra. The statute does not limit this questioning to convictions within a specified time prior to when the question is asked.

The issue is whether the legitimate probative value of such questioning is outweighed by the tendency of the questioning to prejudice the defendant. The trial court ruled the question could be asked in spite of defendant's claim of prejudice. This discretionary ruling is not to be reversed unless " * * * obviously erroneous, arbitrary and unwarranted. * * *" State v. Holden, supra. The ruling in this case is not in that category. Compare State v. Coca, supra.

In addition, the trial court gave a limiting instruction. The jury was told the prior conviction was not to be considered as evidence of defendant's guilt; that the purpose of this evidence as to a prior conviction pertained solely to defendant's credibility. Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), rehearing denied 386 U.S. 969, 87 S.Ct. 1015, 18 L.Ed.2d 125 (1967) states:

" * * * The defendants' interests are protected by limiting instructions, * * * and by the discretion residing with the trial judge to limit or forbid the admission of particularly prejudicial evidence even though admissible under an accepted rule of evidence. * * *"

Issue 9. *The court's failure to instruct the jury to disregard a question to which an objection had been sustained.*

On cross-examination, defendant was asked if the gun was ever out of his possession from the time he left the Griego home " * * * until you dropped it on the mesa at Sandia Base?" Defendant objected. The prosecutor, rephrasing the question, asked defendant if he dropped the gun when he saw the military police. Defendant objected. After a conference at the bench the court sustained the objection.

Defendant then asked the court to instruct the jury to disregard the questions. The court commented: "They weren't answered, they certainly can't base their verdict on questions asked by counsel."

Defendant claims the court erred in failing to instruct the jury to disregard the questions. We disagree. The court's comment, in the presence of the jury, was, in effect, an admonition. Further, the instructions told the jury they were to determine the facts from the evidence, that the evidence consisted of the testimony of the witnesses and the exhibits. The jury was told not to consider what might have been the answers to questions which the court ruled could not be answered.

If an admonition to the jury was required, the court's comment about the specific question, and its instruction, was sufficient.

Issue 10. *Rebuttal evidence as to the peaceful disposition of Griego.*

On rebuttal, two witnesses testified that Griego had a good reputation in his community for "peacefulness and quietude". Defendant contends such evidence is inadmissible until the defense has introduced evidence of the bad reputation of the deceased. Evidence of bad reputation is not required. State v. Brock, 56 N.M. 338, 244 P.2d 131, 34 A.L.R.2d 447 (1952). State v. Pace, supra, states:

> "* * * although not admissible in the first instance, when defendant in his defense undertook to question decedent's character in any respect, the State on rebuttal could then offer proof of reputation that would cast doubt that decedent would have acted in the manner claimed. * * *
>
> "The rule has been applied where a defendant claims self-defense and asserts decedent acted violently toward him, thus opening the door to proof of reputation of the deceased, as to peace and quietude. * * *"

Here defendant claimed self-defense and introduced testimony that Griego acted violently toward him. This opened the door to the rebuttal testimony on Griego's reputation as to "peacefulness and quietude."

Issue 11. *Conversation between a juror and a witness.*

During a noon recess, in the hallway outside the courtroom, a juror initiated a conversation with a witness. Such an unauthorized communication was presumptively prejudicial. State v. Gutierrez, 78 N.M. 529, 433 P.2d 508 (Ct.App.1967).

Here, however, the presumption of prejudice was overcome. The trial court took testimony concerning the incident. The juror had told the witness that when he testified he was to "* * * talk up so everybody can hear you * * *" and indicated that if he did speak up "* * * we'll stand up and cheer for you." The case was not discussed. Nothing was said which reflected on the guilt or innocence of defendant or in any way indicated any prejudice against the defendant.

The court informed the jury that the conversation had been brought to its attention and told the jurors that if they couldn't hear to raise their hand and the court would see to it that the witness speaks loud enough to hear.

The court did not err in denying the motion for a mistrial because this conversation took place. See State v. Lopez, 80 N.M. 599, 458 P.2d 851 (Ct.App.1969); State v. Gutierrez, supra; compare State v. Sanchez, 79 N.M. 701, 448 P.2d 807 (Ct. App.1968).

Issue 12. *Malice—evidence and instructions.*

Malice is required for a killing to be murder. Section 40A-2-1, N.M.S.A.1953 (Repl. Vol. 6). "The malice necessary to sustain a conviction of murder in the second degree may be implied. * * *" State v. Ochoa, 61 N.M. 225, 297 P.2d 1053 (1956).

Defendant contends the trial court should have sustained his motions for a dismissal of the second degree murder charge. He asserts there is no evidence of malice and therefore the trial court erred in instructing the jury concerning malice. He contends that if it was proper to instruct on malice, a portion of the instruction on the subject is an incorrect statement of law.

The instruction told the jury that "* * [m]alice shall be implied when no adequate provocation exists for the killing, * * *" Defendant does not contend this portion of the instruction improperly states the law. See § 40A-2-2(B), N.M.S.A.1953 (Repl. Vol. 6). The claimed incorrect portion of the instruction states: "You may imply malice in this case if you find beyond a reasonable doubt that the killing was perpetrated by means of a deadly weapon. * * *" Defendant's objection to this language is without merit. State v. Gilbert, 37 N.M. 435, 24 P.2d 280 (1933) states:

> "* * * it is within the province of the jury to imply malice in a case where a killing with a deadly weapon has been established. * * *"

But, says defendant, there is no evidence of malice and thus the jury should not have

been instructed as to either of the bases for implying malice—no adequate provocation and killing by means of a deadly weapon. This contention relies on State v. Kuykendall, 37 N.M. 135, 19 P.2d 744 (1933). There, a second degree murder conviction was reversed on the basis the defendant killed under the provocation of an attempt to illegally arrest him. In such a situation the killing is in the heat of passion, and being without malice, is manslaughter. This rule is no more than the application of our statutory definition of voluntary manslaughter to special facts. See § 40A-2-3 (A), N.M.S.A.1953 (Repl. Vol. 6).

Under State v. Kuykendall, supra, if defendant killed Griego under the provocation of an attempted illegal arrest, the killing would be manslaughter. In support of this view, defendant relies on the following evidence, most of which was testified to by defendant, Mapys and Koch.

Griego had told the men to go to the house. On the way to the house, Griego was overheard telling his son to call the police. The three men entered the house but almost immediately started to leave because they didn't want to go to jail over a bale of hay. When defendant started to leave, Griego grabbed him and told him he wasn't going anywhere, that he was to wait for "the law". Griego then took the rock from his pocket, and using it as a bludgeon, hit defendant on the head, knocking him to a squatting position. Defendant then drew the gun. Griego was warned to leave defendant alone. Griego continued to attack with the rock. The fatal shots were fired in the ensuing struggle.

Defendant says this evidence shows that Griego was attempting an illegal arrest (either when he required the men to go to the house or when he attempted to prevent defendant from leaving). Defendant asserts this evidence requires us to hold that defendant killed under the provocation of the attempted illegal arrest. We disagree.

Kuykendall reviewed the record to determine whether the evidence showed the killing was done under the heat of passion or with malice. Because there was no evidence that the killing was with malice, the killing was manslaughter. Kuykendall is not applicable here because there is evidence from which the jury could infer an absence of provocation. That being true, malice could be implied from the absence of provocation or from the undisputed fact that the killing was with a deadly weapon.

Mrs. Griego's testimony supports the inference that the killing was without provocation. She testified that when the three men entered the house, followed by her husband, Griego told her to make some coffee. " * * * I was going to get it, [the coffee pot] and then I turned back and I saw the middle man point the gun to my husband." She identified defendant as the man with the gun. She was facing the three men when she saw the gun. The three men were seven feet from her husband. She heard no conversation either between the men and her husband or between the three men. She did not see her husband strike any of the men. When she saw the man pointing the gun, she ran outside.

Did Griego initiate the fracas? Did defendant pull the gun after being struck or did he point the gun at Griego before any blow was struck? Mrs. Griego's testimony permits the inference that defendant provoked the fight by pulling the gun. Her testimony, if believed, is a basis for implying malice.

Defendant claims Mrs. Griego's testimony is not worthy of belief, and therefore not substantial. He points to confusion, and possibly some contradiction, in her testimony. He also relies on her admission that she felt vindictive toward the three men. Her credibility, and the weight to be given her testimony, was for the jury to decide. State v. Torres, 78 N.M. 597, 435 P.2d 216 (Ct.App.1967). It is not for the reviewing court to make that determination. State v. Fagan, 78 N.M. 618, 435 P.2d 771 (Ct.App.1967).

There being evidence from which malice could be implied, the trial court did not err in submitting the issue of second

degree murder to the jury and did not err in instructing the jury as to the basis on which they could imply malice.

Issue 13. *Instruction—intent to kill.*

The instruction on malice told the jury they could imply malice if the killing was with a deadly weapon. "Deadly weapon" was then defined.

The instruction on malice was followed by an instruction on intent to kill. The jury was told an intent to kill is an essential element of homicide and that such an intent must be proved before defendant could be convicted of second degree murder. The instruction then states:

> "In determining whether there was an intent to kill, it is proper for you to consider whether a weapon was used in the killing, and if a weapon was used the character of such weapon, and the part of the body upon which the wound was inflicted."

Defendant contends that the above instruction, following immediately after the instruction permitting malice to be implied from a killing with a deadly weapon and defining that term, gives a misleading impression. He contends the two instructions emphasize the idea " * * * that the presence of a weapon in connection with the homicide is sufficient in and of itself to establish the commission of a crime. * * *"

To achieve such an impression one would have to ignore the instructions of the court which defined the elements to be proved in order to establish second degree murder, the definition of all the terms used, the instructions on reasonable doubt and self-defense. Specifically, defendant emphasizes a portion of two instructions and ignores all the others.

Instructions are to be considered as a whole. Roybal v. Lewis, 79 N.M. 227, 441 P.2d 756 (1968). The jury was instructed to " * * * consider these instructions as a whole, not picking out one instruction or parts thereof and disregarding others." There is nothing to indicate that the jury failed to comply with this instruction or was in any way misled.

Defendant also asserts that as worded, the instruction permits the jury to " * * * infer intent to kill merely because a weapon was used in the killing." He contends this instruction is incomplete in that it fails to tell the jury they " * * * must consider all other facts and circumstances, * * *"

We agree that the instruction on intent to kill did not tell the jury they must consider all the facts and circumstances in determining whether defendant had such an intent. Each instruction, however, need not contain within its limits all the elements to be considered. The instructions are sufficient if, considered as a whole, they fairly present the issues and the applicable law. Roybal v. Lewis, supra.

The instructions as a whole clearly told the jury to consider the facts and circumstances of the case in deciding the issues presented to them. Considered as a whole, the jury was not told that intent to kill was to be determined solely on the basis that defendant used a gun in the killing. We do not need to review each of the instructions. One example suffices. One of the self-defense instructions told the jury if " * * * it reasonably appeared to the defendant, * * * situated as he then was, and that he honestly believed that he was in imminent danger of losing his life, or receiving great bodily injury, and that he fired the shots to protect himself from the threatened danger, then the shooting would be justifiable. * * *" The failure to refer to "all the facts and circumstances" in the instruction on intent to kill was not error.

Issue 14. *Fundamental error.*

Defendant contends the "combined effect" of the various errors asserted, and previously discussed in this opinion, amount to fundamental error. We disagree. There is no basis for the doctrine of fundamental error unless the innocence of the defendant appears indisputable or the question of defendant's guilt is so doubtful that it would

shock the conscience to permit the conviction to stand. State v. Torres, supra. That is not the situation in this case.

The judgment and sentence are affirmed. It is so ordered.

SPIESS, C. J., and OMAN, J., concur.