645 P.2d 1386

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Meliton MIRABAL, Defendant-Appellant.**

**No. 5564.**

Court of Appeals of New Mexico.

May 20, 1982.

Michael R. Gernsheimer, Santa Fe, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Marcia E. White, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

LOPEZ, Judge.

Defendant appeals his conviction of robbery under § 30-16-2, N.M.S.A. 1978. His sentence was enchanced under § 31-18-16.-1, N.M.S.A. 1978 (1981 Repl.Pamph.), which increases the sentence for commission of a non-capital felony in which a person sixty years of age or older is intentionally injured.

The sole issue presented by the defendant for reversal is that the trial court erred in failing to grant the defendant's motion for mistrial when a witness, in response to a question by the state, commented on defendant's silence after being apprehended. Five other issues were abandoned. *State v. Brown*, 95 N.M. 3, 617 P.2d 1324 (Ct.App. 1980).

On May 18, 1981, Alfredo Madrid, 69 years of age, was knocked down, kicked and robbed of his wrist watch and wallet containing $2.50 near the El Madrid bar in Albuquerque. The defendant was charged with robbing Madrid. The issue at trial was the identity of the person who robbed Madrid.

The testimony was very conflicting as to what happened. Madrid testified that he had been drinking wine the day of the robbery. He had been looking for a house to rent in Albuquerque. While walking by the El Madrid bar, a man offered him a drink and told him that he knew of a house for rent. There was another man present. The three men had a drink near the bar, and then the two men knocked him down and began hitting him and kicking him. The men ran away and were brought back by the police. At the scene of the crime Madrid identified the men as those who had attacked him. At trial Madrid could not identify his attackers.

Officer Accardi testified that while he was driving in the vicinity of the bar, he saw four people hitting and kicking another person on the ground. When he showed up they started running, and he chased the two going in an easterly direction. He managed to grab one of them, and Officer Barela caught the other. Accardi identified defendant as the man he caught running away. Accardi never lost sight of the defendant from the point where he saw him beating Madrid until he apprehended him. After defendant and the other men were caught, Accardi helped Madrid get up, and they walked over to Officer Barela and the two men. Although Madrid smelled of alcohol, was dazed and a bit confused, in Accardi's opinion, he knew what was going on. Before Accardi could ask any questions of Madrid, Madrid pointed to the two men and said they took his wallet. These two men were Meliton Mirabal and Natividad Baca. The wallet was in defendant's companion's pocket. Neither the watch nor the money was found on either defendant or his companion.

Natividad Baca, the man apprehended with defendant, testified that he was one of the four people drinking with Madrid. There was a discussion about getting money to buy more to drink, and Madrid said he did not have any more money. Baca took Madrid's wallet to get more money for drinks, but neither defendant nor the two other men helped him take anything, although defendant was around when all this was happening. Baca entered a plea to the robbery charge, along with the pleas to an unrelated charge of commercial robbery. He testified that he did not hit Madrid; he did not have to use force because Madrid was too old.

Defendant testified that he also was drinking with the others, but that he didn't see what happened between Baca and Madrid because by that time, he was standing up on the sidewalk by the bar. He only saw the others bunched around Madrid. When he saw the police he fled, because he didn't want to get arrested for drinking in public.

The matter on appeal arose when officer Accardi was testifying for the state and was asked the following questions:

Q: And this person you make reference to as the victim, did you identify him later as Alfredo Madrid?

A: Yes, I did. And, uh, at that point we told Meliton Mirabal and Nat Baca * * * gave them * * * read them their Miranda warnings, * * * asked them if they had anything to say about it. They refused * * *

The defendant objected and moved for a mistrial based on Accardi's comments. The trial court denied the motion and gave the following cautionary instruction:

> The jury at this time is cautioned to disregard the testimony of the witness with respect to any statements made by the [either] parties subsequent to the time of the arrest. Do not consider any statements made by the parties at all [when you] consider the testimony in this case.

The record indicates that all this was satisfactory to the defendant at the time.

On appeal, the defendant argues that the comments by Accardi constitute plain error and require reversal irrespective of the curative instruction. *State v. Lara*, 88 N.M. 233, 539 P.2d 623 (Ct.App.1975). In *Lara*, the state prosecutor specifically inquired about the defendant's silence. In that case, this court stated that "[i]f defendant's silence lacks significant probative value, any reference to defendant's silence has an intolerable prejudicial impact requiring reversal." The defendant does not mention *State v. Baca*, 89 N.M. 204, 549 P.2d 282 (1976), which limits, *Lara*.

In *Baca* the state called a detective and asked him whether he had "at any time interview[ed] the defendant?". He responded as follows:

> "Yes, my first contact with the defendant was about 12:05 on the 6th of September. I took him from the jail section, took him upstairs to our investigation section and the first thing I did was advise him of his rights to which he told me he understood. I filled out the standard advice of rights form, and asked him to read it, and read it to him, asked if he understood his rights, which he did. I also had him initial each statement to the form to indicate that he read and understood each one. I then explained a waiver of rights to him and he told me at the time he did not wish to talk to me, he wanted an attorney before he said anything. At that time I terminated the interview, took him to the jail."

The New Mexico Supreme Court in *Baca* said that the detective's testimony was unsolicited and possibly inadvertent. It held that the statement did not constitute plain error, and that the trial court correctly denied a motion for mistrial under N.M.R. Evid. 403, N.M.S.A. 1978.

The Supreme Court in *Baca* stated:

> We, therefore, find it necessary to distinguish and limit *State v. Lara* to those situations where the prosecutor is directly responsible for the improper comment on the defendant's silence.
>
> * * * * * *
>
> We would agree that where, as in *United States v. Hale* [422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99] and *State v. Lara*, the prosecutor comments on or inquires about the defendant's silence, such a reference can have an intolerable prejudicial impact and may require reversal under the "plain error" rule of our Rules of Evidence (rule 103(d)).
>
> We are unwilling to go so far as to say that *any* comment on the defendant's silence must result in a mistrial, or a reversal of the defendant's conviction. We would draw the line between those comments which can be directly attributed to the prosecutor and those comments incorporated within the testimony of a witness. Any reference to the defendant's silence by the state, if it lacks significant probative value, constitutes plain error under rule 103(d) of the New Mexico Rules of Evidence. As such it would require reversal, as stated in the Lara case, even if the defendant fails to timely object. However, where the witness refers to the defendant's silence, the defendant must object to this testimony as required by rule 103(a) in order to pre-

serve the error. In such a situation the defendant would simply be objecting to the testimony of the witness as being inadmissible under either rule 403 or rule 402 of the New Mexico Rules of Evidence. The trial court would rule on this objection and defendant could obtain a review of that ruling on appeal.

Based on the record and all the circumstances, we arrive at the conclusion that the comments by Accardi do not constitute plain error. There is no evidence that the probative value of the comments were substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, as required by evidentiary rule 403. The instruction by the trial court also cured any possible prejudice. *State v. Sanchez*, 87 N.M. 140, 530 P.2d 404 (Ct.App.1974); *State v. McFerran*, 80 N.M. 622, 459 P.2d 148 (Ct.App.1969).

The judgment and sentence are affirmed.

IT IS SO ORDERED.

DONNELLY, J., concurs.

HENDLEY, J., concurs in result only.